ELLIOTT *v.* SACKETT and Another.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Decided March 26th, 1883.

*Contract—Equity—Mistake—Negligence.*

By a written agreement between S. and E., S. agreed to convey land to E. "subject to" an incumbrance on it of $9,000, and E. agreed to pay to S. $15,000, by conveying to him land, some of it "subject to" an incumbrance. Without any further bargain, S. delivered to E. a deed, conveying the land "subject to" the incumbrance, and also containing a clause stating that E. assumes and agrees to pay the debt secured by the incumbrance, as a part of the consideration of the conveyance. E., being ill, did not read the clause in the deed respecting the assumption of the debt, but discovered it afterwards, and promptly brought this suit to have the deed reformed. He had made two payments of interest on the incumbrance. In the negotiations prior to the agreement, S., through his agent, had solicited E. to assume and agree to pay the incumbrance, but E. refused. S.

understood the difference in meaning between the two forms of expression. D., the owner of the incumbrance, was no party to the transaction, and had done nothing in reliance on the deed. He was, on his own application, made a party to the suit, and also filed a cross-bill for a foreclosure of the incumbrance, and the inforcement of a personal liability against S. and E. for the debt. The circuit court made a decree dismissing the bill in the original suit, and adjudging that E. had agreed with S. to pay the amount due on the incumbrance ; that S. and E., or one of them, should pay the debt due to D., and, in default thereof, the land should be sold, and the deficiency reported ; and that, if S. should pay any part of the debt, he might apply for an order requiring E. to repay the amount to him. On an appeal by E. : *Held,*

1. The decree was a final decree, as to E.
2. The amount involved in the original suit was the $9,000.
3. The agreement created no liability on the part of E. to pay the debt to D.
4. There was a departure in the deed, through mutual mistake, from the terms of the actual agreement.
5. Under the special circumstances of the case E. had a right to presume that the deed would conform to the written agreement, and was not guilty of such negligence or laches in not observing the provisions of the deed as should preclude him from relief, nor was he guilty of any laches in seeking a remedy.
6. The payment by E. of interest on the incumbrance was not inconsistent with his not having assumed the payment of the debt.
7. E. is entitled to have the deed reformed.

The case of *Snell* v. *Insurance Co.*, 98 U. S. 85, cited and applied.

Bill in equity to reform a contract.

In February, 1876, George A. Sackett and John A. Elliott executed a written agreement under seal, which provided that if Elliott should first make the payments and perform the covenants thereinafter mentioned on his part to be made and performed, Sackett agreed to convey to him " in fee simple, clear of all incumbrances, except as stated, whatever," by a warranty deed, " the house and lot known as No. 166 Calumet avenue, the lot 50 x 127 feet," in Chicago, Illinois, and to assign the insurance policy then " on said improvements," and to pay to Elliott $50 ; that Elliott agreed to pay to Sackett $15,000, " subject to an incumbrance now on said property " of $9,000, " in the manner following : Lots 8, 9, and 10, block 5, Pittner & Son's addition to So. Evanston, being 150 x 200 feet, subject to an incumbrance of $1,750, and interest at eight per cent. from June, 1873 ; also, lot one (1), block seven (7), Grant's sub-

division of So. Evanston, and 120 acres of land, Palo Alto Co.; Iowa; the two last named pieces of property are clear of incumbrances ; and title to pass by good and sufficient warranty deeds; and to pay all taxes, assessments, or impositions that may be legally levied or imposed upon said lots, except and after the fourth installment of South Park assessment;" and, in case of the failure of Elliott to make either of the payments, or perform any of the covenants on his part, the contract to be forfeited and determined, at the election of Sackett, and Elliott to fulfil all payments made by him on the contract, and such payments to be retained by Sackett in full satisfaction and liquidation of all damages by him sustained, and he to have the right to re-enter and take possession.

By a warranty deed dated March 8th, 1876, acknowledged the same day, and recorded March 10th, 1876, Sackett and his wife conveyed to Elliott the Calumet avenue property, by a proper description. The deed expressed a consideration of $15,000, and contained this clause :

" This conveyance is made subject to a trust deed executed by the parties of the first part" (Sackett and wife) "to John De Koven, on the (10th) tenth day of May, 1870, securing the notes of said George A. Sackett to Hugh T. Dickey, for nine thousand dollars, due four years from that date, with interest of nine per cent. per annum, interest payable semi-annually ; and a further extension of payment commencing on the tenth day of May, 1874, for same amount above mentioned (nine thousand dollars), payable in five years from said date, with interest of nine per cent., the interest notes payable semi-annually, which debt, with its interest, the said party of the second part " (Elliott) "assumes and agrees to pay as part of the consideration of this conveyance, or purchase price above stated. The covenants hereinafter are subject to the above incumbrance."

Then followed covenants of seizin and warranty and against incumbrances.

The controversy in the present case arose out of the difference between the written agreement executed by the parties and the deed to Elliott, there being no question as to the con-

veyances by Elliott of the land which he agreed to convey. By the agreement the Calumet avenue property was to be conveyed subject to the $9,000 incumbrance. By the deed the conveyance was not only made subject to the incumbrance, but Elliott was made to assume and agree to pay the $9,000 debt as part of the consideration of the conveyance, or purchase price of $15,000.

In April, 1877, Elliott filed a bill in a State court in Illinois against Sackett, praying that the deed be reformed by striking therefrom the words stating that Elliott assumed and agreed to pay the $9,000 debt, as part of the consideration. The bill alleged that the consideration for the agreement of Sackett to convey the Calumet avenue property to Elliott was the agreement of Elliott to convey to Sackett the other property named in the written agreement; that one Hill, as agent of Sackett, solicited Elliott to purchase the Calumet avenue property; that during the negotiations, Hill and Sackett solicited Elliott to assume the payment of the incumbrance, but Elliott refused to assume any liability on account of it, and insisted that he would simply purchase the property subject to the incumbrance, and thereupon the written agreement was made; that the statement in the deed that Elliott assumed and agreed to pay the incumbrance as a part of the consideration for the premises was contrary to the mutual understanding between Hill and Sackett and Elliott, and contrary to the written agreement; that Elliott, when he received the deed, was suffering under physical infirmities and mental distress, and did not examine the deed as carefully as he should otherwise have done, but had the deed recorded, believing that Sackett had acted in good faith and had made the deed in conformity with the understanding of the parties and the written agreement; and that Elliott had recently discovered the mistake in the deed.

In June, 1877, Dickey, the owner of the $9,000 note made by Sackett and secured by the deed of trust, was, by an order of the State court, on his petition, made a defendant in the suit and allowed to file an answer and a cross-bill. His answer controverted the material allegations of the bill. A few days later, on the petition of Dickey, the suit was removed into the

Circuit Court of the United States for the Northern District of Illinois, and Dickey filed a cross-bill in the latter court, making as defendants Sackett and his wife, De Koven, the trustee, Mattocks, his successor in the trust, Elliott, and Underwood, the tenant of Elliott. The cross-bill alleged that the whole amount secured by the note and the trust deed was due, and that by the terms of the conveyance to Elliott he became liable to pay the debt to Dickey, and prayed for a sale of the premises to pay the amount due, and a foreclosure of the equity of redemption of the defendants, and the payment of the debt out of the proceeds of sale, and a decree against Sackett and Elliott for any balance due beyond the proceeds of the sale.

Sackett answered the original bill. The answer admitted that Sackett entered into an agreement in writing to convey the premises "in a certain manner and on certain conditions," the exact words and terms of which he did not remember. It admitted that Sackett, at the time of the negotiations with Elliott for the sale of the premises, solicited Elliott to assume and agree to pay the incumbrance of $9,000. It then proceeded:

"And this respondent denies that the said complainant refused the said solicitations and request of this defendant, but this respondent avers and will, at the proper time and place, prove the truth to be, that when the negotiations, conversations, and details preliminary to the final completion of the transactions upon which this suit was brought, were ended, and the parties were ready to close the transaction by the delivery of the deeds, it was fully and fairly understood by the parties to the same that a warranty deed conveying the said premises, 166 Calumet avenue, should and would be accepted by the said Elliott with the condition of conveyance therein provided, viz.: that the said Elliott did assume and agree to pay, as a covenant of said deed, the before mentioned nine thousand dollars, and interest semi-annually, and the warranty deed of this defendant contained that provision accordingly."

The answer also averred that Elliott carefully read over the deed in the office of Hill, at the time of the delivery of the papers in the transaction, in the presence of Sackett, "being fully aware of and noting especially, as this defendant believes,

from his best recollection, the said clause in said deed which complainant now desires shall be expunged."

In March, 1878, Elliott answered the cross-bill, setting up that the clause in the deed from Sackett and wife as to the agreement by Elliott to pay the incumbrance was inserted by mistake or fraud on the part of Sackett or his agent, and repeating the averments of his original bill.

Replications were filed to the answer of Sackett to the original bill and to the answer of Elliott to the cross-bill, and the cross-bill was taken as confessed as to the other defendants in it, and the cause was referred to a master to take proofs and report the same to the court, with the amount due to Dickey. Proofs were taken and the causes were brought to a hearing thereon. The court made a decree dismissing the original bill for want of equity, and adjudging that all the material allegations in the cross-bill are proved; that the equities were with Dickey; that there was due to him from Sackett $11,399.28, with interest; and that Elliott, for a valuable consideration, assumed and agreed with Sackett to pay the amount due on the mortgage to Dickey. The decree then provided that Sackett and Elliott, or one of them, should pay to Dickey, within one day from the date of the entry of the decree, the amount so due to him, with interest and costs of suit, and that, in case the payment was not made, the premises should be sold by a master, and that he should report any deficiency in the proceeds of sale to pay the amount due. The decree concluded with providing that in case Sackett should pay such indebtedness, or any part thereof, he should have leave to apply to the court, on notice to Elliott, for a further order, at the foot of the decree, requiring Elliott to repay to Sackett the sum so paid on said indebtedness. Elliott appealed to this court.

*Mr. William E. Mason* for the appellant, cited *Cochran* v. *Chitwood*, 59 Ill. 53; *Snell* v. *Insurance Co.*, 98 U. S. 85; *Insurance Co.* v. *Wilkinson*, 13 Wall. 222; *Davis* v. *Symonds*, 1 Cox, 402; *Seymour* v. *Delancey*, 6 John. Ch. 222; *Miner* v. *Hess*, 47 Ill. 170.

*Mr. Edward G. Mason*, for the appellees.—I. It must appear

that a contract is different from the intention of *both parties* to justify a court of equity in reforming it.  The deed complained of is exactly in accordance with the intention of Sackett, one of the parties to it.   Story on Equity Jurisprudence, 11th edition, p. 144, § 138, K. note; *Schettiger* v. *Hopple*, 3 Grant's Cases, 54; *Nevius* v. *Dunlap*, 33 New York, 676; *Coffing* v. *Taylor*, 16 Ill. 457; *Ruffner* v. *McConnell*, 17 Ill. 217; *Sutherland* v. *Sutherland*, 69 Ill. 481; *Snell* v. *Insurance Company*, 98 U. S. 85.—II.  A court of equity will only reform a contract *upon the clearest and most convincing proof of mistake.*  No such proof is found in this record.  Story on Equity Jurisprudence, 11th edition, pp. 157, 161, §§ 152 and 157, and cases cited; *Schettiger* v. *Hopple*, 3 Grant's Cases, 54; *Nevius* v. *Dunlap*, 33 New York, 676; *Edmonds' Appeal*, 59 Penn. St. 220; *Ruffner* v. *McConnell*, 17 Ill. 217; *Hunter* v. *Bilyeu*, 30 Ill. 228; *Sutherland* v. *Sutherland*, 69 Ill. 481; *Ivinson* v. *Hutton*, 98 U. S. 79; *Snell* v. *Insurance Co.*, 98 U. S. 85.—III.  The weight of the evidence shows that *no mistake at all was made* in the deed from Sackett to Elliott.  The evidence of the deed is not overcome by that of the preliminary contract, even if they differ.  Story on Equity Jurisprudence, 11th edition, page 165, § 160, and cases cited.   Sackett's testimony as to what the agreement was, is practically uncontradicted, and is confirmed by the other witnesses.  Elliott's own conduct shows that he regarded the contract as one of assumption. *Miller* v. *Thompson*, 34 Mich. 10; *Coolidge* v. *Smith*, 129 Mass. 558; *Muhrig* v. *Fisk*, 131 Mass. 110.   The proof in favor of mistake is exceedingly weak.   The deed properly expresses the legal effect of the contract.   A purchaser taking a deed " subject to " an incumbrance, the amount of which is deducted from the purchase price, becomes personally liable for the same. *Comstock* v. *Hitt*, 37 Ill. 542; *James* v. *Day*, 37 Iowa, 164; *Herbert* v. *Doussan*, 8 La. Ann. 267; *Fowler* v. *Fay*, 62 Ill. 377; *Waters* v. *Hubbard*, 44 Conn. 340.—IV.  If Elliott made any mistake, it was one of law and not of fact, from which a court of equity will not relieve him.  *Hunt* v. *Rousmanier's Administrators*, 1 Pet. 1; *Bank of the United States* v. *Daniel*, 12 Pet. 32; *Sibert* v. *McAvoy*, 15 Ill. 106; *Wood* v. *Price*,

46 Ill. 435; *Snell* v. *Insurance Company*, 98 U. S. 85.—V. Even where the minds of the parties have never met, courts of equity do not interfere where there was gross negligence on the part of the plaintiff. Story on Equity Jurisprudence, 11th edition 143, § 138 *i.*; *Graves* v. *Boston Marine Ins. Co.*, 2 Cranch, 419; *Grymes* v. *Sanders*, 93 U. S. 55; *Snell* v. *Insurance Co.*, 98 U. S. 85.—VI. Nor do courts of equity interfere where intervening rights have accrued, or where the parties cannot be placed *in statu quo ante.* Story on Equity Jurisprudence, 11th edition, p. 143; *Grymes* v. *Sanders*, 93 U. S. 55; *New Orleans Canal and Banking Company* v. *Montgomery*, 95 U. S. 16.

MR JUSTICE BLATCHFORD delivered the opinion of the court. After stating the facts as above, he said:

It is objected by the appellee Dickey, that there is nothing in the record to show that the amount in controversy exceeds $5,000; and that the decree, so far as Elliott is concerned, is not a final one. It is urged that the provision of the decree is, that, if the amount specified is not paid to Dickey within one day, the premises shall be sold, and, if the proceeds of sale are insufficient, the master shall report the amount of the deficiency; that this is not a deficiency decree against Elliott; that it does not appear that it will ever be necessary to enter a deficiency decree against any one; that, on the decree, as it stands, no execution can be issued against any one; that all the evidence goes to show that the deficiency decree will not exceed $2,000; and that the decree is merely interlocutory as to Elliott, because, until a sale is made, there can be no cause of complaint on the part of Elliott. The answer to this objection is, that the decree dismisses the original bill, and adjudges that Elliott agreed with Sackett, for a valuable and sufficient consideration, to pay the amount due on the incumbrance. The amount involved in the original suit is the entire amount of the incumbrance, which Elliott is made by the deed to him to agree to pay, and the bill seeks relief from liability for that amount, by striking out the clause from the deed. The decree denies that relief. If that relief was wrongly denied, all relief against Elliott under the

cross-bill necessarily falls, as the only liability from Elliott to Dickey arises from that clause in the deed.

On the merits, we are of the opinion that Elliott is entitled to the relief he asks by his original bill. The terms of the written agreement between Sackett and Elliott are very clear, and show that the parties were merely making an exchange of land. Sackett agrees to convey to Elliott the Calumet avenue property, subject to the $9,000 incumbrance, and to assign an insurance policy, and to pay $50. Elliott agrees to convey to Sackett three lots subject to a specific incumbrance, and two other pieces of property clear of incumbrance. It is true, that Elliott agrees to pay to Sackett $15,000, but the agreement expressly states that that sum is to be paid " in the manner following," which is by conveying the land described. The land to be conveyed to Sackett is apparently valued by the agreement, for the purposes of the transaction, at $15,000. Nothing is said about deducting the $9,000 from the price of the property to be conveyed to Elliott, nor is any sum named as the purchase money of that property. An agreement merely to take land, subject to a specified incumbrance, is not an agreement to assume and pay the incumbrance. The grantee of an equity of redemption, without words in the grant importing in some form that he assumes the payment of a mortgage, does not bind himself personally to pay the debt. There must be words importing that he will pay the debt, to make him personally liable. The language of the agreement in the present case does not amount to such an undertaking on the part of Elliott. It is only a statement that the conveyance is to be subject to the incumbrance, and creates no personal liability in the grantee. Such is the law in Illinois, where this land is situated, *Comstock* v. *Hitt*, 37 Ill. 542; *Fowler* v. *Fay*, 62 id. 375, as well as the law in other States. *Belmont* v. *Coman*, 22 N. Y. 438; *Fiske* v. *Tolman*, 124 Mass. 254.

Under the written agreement, therefore, it is plain that Elliott assumed no personal liability. Both parties executed this agreement and are to be held to have understood it in that sense. Sackett, in his answer, does not deny the allegation of the original bill, that the agreement between the parties was

that neither Sackett nor Elliott should assume or agree to pay outstanding incumbrances on the respective parcels of land, and that that appears by the written agreement. But the answer, while admitting that Sackett entered into an agreement in writing to convey the premises in a certain manner and on certain conditions, and referring to such agreement for certainty, sets up, that, after the written agreement was made, the parties came to an understanding that Elliott would accept a deed whereby he should assume and agree to pay the $9,000 incumbrance, and that the deed given " contained that provision accordingly." There is no evidence to support this allegation. Sackett testifies that he never had any conversation with Elliott in regard to his assuming liability for the mortgage, but that they met together and the deeds to each other were passed. Sackett had employed Hill as his agent to dispose of the Calumet avenue property. Elliott testifies that Hill offered him the property and wanted him to assume the incumbrance, but he refused, and that finally Hill brought in the agreement which was signed by both parties. Hill testifies to the same effect. Elliott says that when Sackett gave him the deed in Hill's office, he was unwell; that he did not read that part of the deed which states that he is to assume and pay the incumbrance, but only read the prior part which states that the conveyance is made subject to the incumbrance; and that he discovered the mistake in the deed a short time before he commenced this suit.

The actual contract of the parties, as understood by both of them, is shown by the written agreement. Nothing was agreed upon to vary that. Sackett, as he shows by his testimony, knew the difference as to liability which the difference in the language would make, and knew what the language of the written agreement was, and must be held to have understood it to mean what it does mean, and to have known that Elliott understood it in the same sense. So, in the departure from it in the deed, there was a mutual mistake, it not being shown, as set up in the answer of Sackett, that there was an intention, fully and fairly understood by both parties, that in the deed Elliott should assume and agree to pay the incumbrance. Under all

the circumstances proved in this case (and every case of the kind must depend very largely on its special circumstances), Elliott had a right to presume that the deed would conform to the written agreement, and was not guilty of such negligence or laches, in not observing the provisions of the deed, as should preclude him from relief.

Neither Dickey nor the trustee was a party or a privy to the transaction between Sackett and Elliott, nor was the trust deed taken, or the debt created or extended, or anything else done by Dickey or his trustee, in reliance on any assumption of the debt by Elliott. As respects the trust deed, the parties to it and to the debt it secured occupied the same position when this suit was brought as when the deed to Elliott was delivered, no new rights having been acquired in reliance on that deed, and none which existed when it was delivered being sought to be impaired by the relief asked by Elliott. Elliott does not seek to interfere with the property he conveyed to Sackett. No circumstances exist on which laches can be predicated on the part of Elliott as to seeking a remedy. The fact that Elliott made two payments of the interest on the incumbrance is not inconsistent with his not having assumed the payment of the incumbrance. As owner of the property subject to the incumbrance, and desirous of retaining it so long as there was any value in the equity of redemption, he would naturally pay the interest to save a foreclosure.

The principles applicable to a case like the present are fully set forth in the opinion of this court delivered by Mr. Justice Harlan, in *Snell* v. *Insurance Co.*, 98 U. S. 85, and the leading authorities on the subject are there collected. Within those principles this is a case where, in the preparation of the deed to Elliott, there was, by mutual mistake, a failure to embody in the deed the actual agreement of the parties as evidenced by the prior written agreement. The meaning of that prior agreement is clear, and nothing occurred between the parties, after it was signed and delivered, to vary its terms, except the mere fact of the delivery of the deed, the terms of which are complained of and sought to be reformed. The deed did not effect what both the parties intended by the actual contract which

they made, and the case is one for the interposition of a court of equity.

*The decree of the circuit court is reversed, with costs, so far as it dismisses the original bill, and so far as it adjudges that Dickey has any equities as against Elliott, and so far as it adjudges that Elliott assumed and agreed to pay the amount due on the mortgage to Dickey, and so far as it adjudges that Elliott shall pay to Dickey the amount found due to him and the costs of the suit, and so far as it provides for an application by Sackett for an order that Elliott repay to him any sum which he may pay on the debt due to Dickey; and the cause is remanded to the circuit court, with directions to enter a decree in the original suit granting the prayer of the bill with costs, and for such further proceedings in the original and cross-suits as may not be inconsistent with this opinion.*