Wilson, P. J.
Plaintiff Robertson and Bruce F. Johnson made an exchange of real property situate in Larimer county, the plaintiff paying in cash a difference of about six hundred dollars. The negotiations on the part of Johnson were conducted almost entirely by Miss Sarah E. Eddy, who acted as his agent, and in such capacity alone, so far as the plaintiff knew. In reality, she was interested in and the principal beneficiary of the trade, she owning an equity in the land to be conveyed by Johnson, and the cash payment to be made in this trade by the plaintiff being about sufficient to liquidate her indebtedness to J ohnson. Each piece of realty had a mortgage encum *314 brance upon it, and. according to the agreement the grantee in each case was to assume payment of the encumbrance upon the land conveyed to him. The encumbrance upon thetland to be conveyed by plaintiff was in the form ,of a deed o.f .trust executed by plaintiff to secure payment of a note given by him of date September 2, 1889, for the principal sum of $2,500.00, payable five years after date, with interest at. the rate of seven per cent, per annum, payable semi-annually. Upon July 5, 1892, ■ Miss Eddy at Port Collins in Larimer- county presented to plaintiff a deed duly executed by Johnson. Plaintiff thereupon executed his deed, but inserted the name of the de: fe.ndant herein as grantee, by direction of Miss Eddy,' she stating that Johnson had sold the land to defendant. Among the covenants in this deed against encumbrances was the following: “Except a certain deed of trust to secure the payment of $2,500.00 and interest thereon, the payment of which sum said party of the second part hereby assumes.” ; The deed was after execution delivered to Miss Eddy, who placed it on record'in the proper office of Larimer county. Defendant was not present at this transaction and was at that time and at all times thereafter, a-resident of <Greeloy, in Weld county. Some time previous to this, Miss Eddy had informed defendant that she had intended to place some real property in her name,but defendant expressed her objection. Defendant never saw the Robertson deed, and had no knowledge that it had been executed to her until a considerable time thereafter, when Miss Eddy informed her of the fact,-but stated that she was not going to hold the land. She did not tell defendant at that time, or at any time, nor did Mr. Robertson or any one else until long afterwards, as will be hereafter mentioned, that there was any assumption clause in the deed, or that by becoming grantee she had assumed *315 any liability or responsibility whatever. She, in fact, -never saw the Robertson deed. On April 19, 1893, at the request of Miss Eddy, defendant signed a deed presented to her by Miss Eddy, already prepared, conveying to a Mrs. Elrod the land conveyed to her by the Robertson deed. On the same day, it appears •plaintiff af Port Collins executed a second deed at the request of Miss Eddy to the defendant, to correct an error of omission in the former deed, and this •deed the-defendant received by mail from the recorder ■about a week after she had executed the Elrod deed, Rut she did not read it or examine it, simply turned it over to- Miss Eddy. On March 31, 1896, about •eighteen months after the maturity of the note secured by the deed of trust, and nearly four years after the execution of the deed to defendant, the ■former was foreclosed, but at the sale there was not realized sufficient to pay off the encumbrance. Two days prior to this sale, the defendant was notified for the first time by a letter from the attorney of plaintiff that the deed executed to her by plaintiff contained an express assumption by her of the indebtedness secured by the trust deed. Plaintiff was compelled by suit to make good the deficiency, paying the difference between the amount realized at the sale, and that due upon the note, and he brought this suit to recover such sum from the defendant.
There is no conflict in the evidence bearing upon the facts material to the determination of this controversy, and this court is therefore not concluded by any findings of the trial court.. There is not the slightest testimony tending to show that the defendant at the time of or prior to the execution of the Robertson deed had any knowledge whatever of any intention to insert in it her name as the grantee. Iier testimony is unequivocally'to the contrary, and also to the .effect, that she never saw the deed and never *316 knew of its execution until long afterwards. Likewise,' her testimony is unequivocal, and there was none tending to dispute it, that she never was informed or had any knowledge of there being in such deed a clause binding her to assume payment of the encumbrance upon it, or of any encumbrance, and that she never had any interest whatever in the transaction, never assumed charge of the property, or knew anything about it, never paid taxes upon it, and never paid any interest upon the indebtedness, or received any notice requesting such payment. The sole question to be determined here is whether under these circumstances and this state of facts, defendant is liable in this suit. We feel quite clear that the answer must be in the negative. It is the law in this jurisdiction that the obligation which the grantee in a deed assumes, to pay an encumbrance upon the land, arises out of contract purely. — Starbird v. Cranston, 24 Colo. 25.
It follows, therefore, upon general principles, that in order to be bound the consent of the obligor must be shown in some way. Where the contract is in writing, and signed by both parties, this may be done by proving the signature to the instrument, but where the alleged contract, as in this instance, is unilateral in form, the assent of the party not signing, and sought to be bound, must be shown in some way, as by the acceptance or enjoyment of the benefits and profits from the conveyance. Where the grantee is the actual purchaser — the one who accepts the conveyance and goes into possession of the premises conveyed — the assumption may readily be indulged, from possibly in some cases slight circumstances, that he assented to an assumption clause in the conveyance, but we think that both under the authorities and in reason, the circumstances should be much stronger before such an assumption could *317 be indulged, where the grantee was one who as in this case was entirely ignorant of the transaction, —never had any interest in it, and never derived any profit from it, was, in fact, a mere involuntary trustee. If this were not the case, it would open the door for the perpetration of very gross fraud. Suppose, for instance, that A at the instance of B should convey to G a tract of land encumbered for far more than its actual value, inserting in the deed an assumption of the encumbrance, without the knowledge or consent of .G. Suppose G thereafter should be informed by B that he had caused the title to certain land to be placed in his name by the execution of a conveyance to him, but did not inform him at all of any assumption of indebtedness clause which it contained, and G had no knowledge of the fact; and thereafter G at the request of B should convey the title thus placed in him to another person, could it be successfully contended, either in law or reason, that G was liable upon a contract of which he had no knowledge, and to which he never consented, to assume a large amount of indebtedness? The mere statement of the case in our opinion furnishes its own answer.
The recording of the deed does not in any sense show a delivery or acceptance by the grantee so as to bind her, because, if for no other reason, the deed contained a clause which was unusual in and not necessary to a conveyance, and to which the actual assent of the grantee as well as of the grantor, was necessary. Whatever argument, if any, could be based upon the failure of a grantee to read the deed, it is not necessary to consider, because in this case, according to the evidence, the grantee never had a chance to read it. She never even had an opportunity to read the correction deed until after she had conveyed the title which was vested in her. We see noth *318 ing in "the facts of the case even tending'to place ■upon defendant any equitable obligation to pay this debt, because of any failure on her part to have done what it is claimed she ought to have done. Indeed, there was a failure in this respect, if at all, on the part of the grantor in the deed. Mr. Robertson, upon the mere direction of Miss Eddy, was assuming to enter into a contract with the defendant, who was not present and of whose consent he had no knowledge, whereby she was to assume an obligation of $2,500.00, and he did not take the precaution thereafter to communicate in 'any manner with the defendant in order to ascertain if she did or would consent. Por authorities bearing upon the question discussed, see: Girard Life Ins. & Trust Co. v. Stewart, 86 Pa. St. 89; Lennig Estate, 52 Pa. St. 135; Thompson v. Dearborn, 107 Ill. 87; Higman v. Stewart, 38 Mich. 513; Bull v. Titsworth, 29 N. J. Eq. 73; Culver v. Badger, id. 75; Parker v. Jenks et al., 36 N. J. Eq. 398. In Thompson v. Dearborn, supra, it was said: “The law requires something’ more than the mere insertion by the grantor of a clause in a deed that the grantee assumes an encumbrance. . * * * The act of recording a deed cannot amount to a delivery and acceptance when there does not appear an assent or knowledge by the grantee of the act.” In Higman v. Stewart, supra, the court in speaking of a case where the conveyance was actually delivered to the grantee, said, “The mechanical transit of the document containing the clause would not be enough. An intelligent assent, — something evincing an actual acceptance of the tendered bargain, would be: necessary. * * * The reception and retention of the paper are evidence, undoubtedly of acceptance, but they are not the same thing as acceptance, nor conclusive evidence’ of it.”
If it had been shown that the defendant in this *319 ease prior to the execution' by her of the deed to Mrs. Elrod had notice and knowledge that the Robertson deed executed to her contained the assumption of encumbrance clause, and that she made no objection, and had made no effort to have the correction made; the case might be entirely different.
Coolidge v. Smith, 129 Mass. 554, upon which-counsel for plaintiff confidently rely, is clearly distinguishable from the case at bar. In that ease, a husband, without the previous knowledge or consent of his wife, caused her name to be inserted as grantee in a deed which contained a clause assuming an enciimbrance upon the property. The evidence disclosed that the wife had knowledge of the conveyance soon after its execution, and that she thereupon claimed to be the owner of the land; and that after the date of the conveyance she went alone to the house of the mortgagee, and paid interest due upon the mortgage debt, stating that she had purchased the property, and had come to pay such interest. There was also evidence tending to show that the husband had previously in other transactions acted as the agent of the wife with her consent. The materiality of the difference in the facts of the two cases is at once apparent.
Every case of this kind must depend mainly upon the special circumstances connected with and surrounding it. No general rule decisive in all cases can be laid down. — Elliott v. Sackett, 108 U. S. 142.
Upon the evidence presented in this case, we have no hesitancy in saying that the- judgment rendered was not justified, and cannot be sustained. It must therefore be reversed.

Reversed.