THE NATIONAL UNION FIRE INSURANCE COMPANY *et al.* Plaintiffs in Error, *vs.* THE JOHN SPRY LUMBER COMPANY, Defendant in Error.

*Opinion filed June 18, 1908.*

1. PRINCIPAL AND AGENT—*one having notice of agent's authority cannot bind principal by dealing beyond such authority.* Where a party dealing with an agent has notice of the scope and extent of the agent's authority, particularly where the agent is a special agent and his authority is evidenced in writing, he is bound by such notice, and cannot hold the principal by dealing with the agent beyond the scope of his authority.

2. INSURANCE—*when equity will not reform policy after loss.* Fire policies upon lumber in a yard will not be reformed in equity after a loss, so as to confine the insurance to lumber in a certain part of the yard other than where the loss occurred, upon the ground of certain representations claimed to have been made by the insurance agent who procured the policies for the insured from the complainants, where the latter had actual notice of the location of the lumber yard and the surroundings, and never claimed that any mistake had been made in the policies until after the loss occurred and suit was begun on the policies.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. W. M. McEWEN, Judge, presiding.

BEACH & BROWN, for plaintiffs in error.

ADAMS & FROEHLICH, for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in equity filed by the Queen Insurance Company, the National Union Fire Insurance Company and the Virginia State Insurance Company, against the John Spry Lumber Company, in the superior court of Cook county, to reform certain insurance policies issued by said insurance companies, respectively, to said John Spry Lum-

ber Company, because of mistakes made in the descriptions of the location of the property intended to be covered by said policies, respectively, and to enjoin the prosecution of certain actions at law which had been commenced against the said insurance companies by said John Spry Lumber Company to recover for losses by fire of the property claimed to be covered by said policies. The defendant answered said bill, and there was a trial before the court, and a decree was entered dismissing the bill for want of equity, which decree has been affirmed by the Appellate Court for the First District, and a writ of error has been sued out from this court by the National Union Fire Insurance Company and the Virginia State Insurance Company to review the judgment of the Appellate Court.

It appears from the pleadings and proofs that at the time said insurance policies were issued the defendant was in the possession of a certain mill and lumber yard located on the east side of Ashland avenue, north of the west branch of the south branch of the Chicago river, in the city of Chicago; that George E. Spry, who was the secretary and treasurer of the John Spry Lumber Company, gave to S. F. Requa & Sons, who were in the insurance business in the city of Chicago, a verbal order to send the John Spry Lumber Company "some insurance on the east side;" that S. F. Requa & Sons not being able to furnish all the insurance desired by the John Spry Lumber Company in insurance companies which they represented, applied to the agents representing the complainant insurance companies in Chicago for insurance on the property of said John Spry Lumber Company in accordance with the order of Mr. Spry, and the insurance policies in controversy were issued by said insurance companies, respectively. The Queen Insurance Company issued one policy for $1000 and one for $750, and the National Union Fire Insurance Company issued one policy for $1500 and the Virginia State Insurance Company issued one policy for $500, and delivered the same

to S. F. Requa & Sons and charged the premiums to said S. F. Requa & Sons, who delivered said insurance policies to the John Spry Lumber Company and collected the premiums from said lumber company thereafter, and turned over said premiums to the agents of said insurance companies, respectively, less the usual commissions on that class of business, which were retained by said S. F. Requa & Sons. The property covered by said insurance policies was described in all of said policies as being "on lumber, lath, shingles, pickets, posts, timber, hardwood flooring, or other merchandise not more hazardous, their own or held by them in trust or on commission or sold but not delivered, all contained in their yard, or in buildings, sheds or cars on track in said yard, situated on the east side of Ashland avenue, extending north from the west branch of the south branch of the Chicago river, Chicago, Illinois." One or more of the policies were renewed, and the premium paid for said insurance and upon said renewals was at the rate of $4.84 per $100 of insurance. On the sixth day of October, 1905, and while the policies sought to be reformed were in force, a fire occurred in the mill of said John Spry Lumber Company located in its yard "situated on the east side of Ashland avenue, extending north from the west branch of the south branch of the Chicago river, Chicago, Illinois," and a large amount of lumber belonging to the John Spry Lumber Company of the character covered by said insurance policies, respectively, was destroyed. The defendant made proof of loss, but said insurance companies declined to pay said loss on the ground that when they issued said insurance policies they did not intend to insure any property of the John Spry Lumber Company situated in said mill, or situated south of an open strip sixty-five feet wide which runs east and west across said lumber yard immediately north of the said mill, and although they admitted that the description found in said insurance policies, respectively, covered the property destroyed, they claimed all property

described in said policies which was contained in the said mill or situated in the yard south of said open strip was included in said insurance policies, respectively, by mistake, whereupon the John Spry Lumber Company brought actions at law upon each of said policies to recover for said loss, and this bill was filed.

It is claimed by the insurance companies that at the time S. F. Requa & Sons applied to said insurance companies for insurance for and on behalf of the John Spry Lumber Company, said firm represented to their respective agents that they wanted insurance for said John Spry Lumber Company upon the lumber of said company situated upon that part of its yard located north of the sixty-five foot open strip, and not upon the mill or its contents. It is also claimed that the rate upon lumber, etc., in the mill or situated south of said sixty-five foot open strip was much higher than the rate upon lumber piled upon the yard north of the sixty-five foot open strip, which difference in rate was known to S. F. Requa & Sons and to Mr. Spry at the time the insurance policies were issued, and it is contended those facts established that a mistake was made in the insurance policies at the time they were issued and that the lumber in the mill was wrongfully included in the policies. This contention is based mainly upon the view that S. F. Requa & Sons were the agents of the John Spry Lumber Company in procuring the insurance from said insurance companies, and that the John Spry Lumber Company was bound by the representations and statements made by S. F. Requa & Sons to the agents of said insurance companies at the time said policies were issued. While we do not deem it necessary to determine to what extent S. F. Requa & Sons were the agents of the John Spry Lumber Company in procuring said insurance, yet we think, if it were conceded that such agency existed, the evidence found in this record, when taken as a whole, does not make such a case as would authorize a court of equity, after a fire had oc-

curred and the property covered by the insurance policies had been destroyed, to reform said insurance policies in the particulars prayed for. As we understand this record, the John Spry Lumber Company had two yards,—one upon the east and one upon the west side of Ashland avenue, in the city of Chicago,—and that Mr. Spry, at the time he gave the order to S. F. Requa & Sons to send up some insurance, confined the order to insurance "on the east side." It also appears that the agents of the insurance companies were familiar with the location and situation of the yards of the John Spry Lumber Company, knew of the mill and its location in the yard and of the sixty-five foot open strip and the portion of the yard north of said open strip, and the kind and quality of lumber and material kept in the mill and stored in the yard; that they not only had personal knowledge upon that subject, but that each company kept in its office maps and plats and other data which showed the entire situation of the John Spry Lumber Company's yard and the lumber and other material kept and stored therein. It also appears that the John Spry Lumber Company had prepared a special form which was to be used in effecting insurance in their yard "on the east side," which is as follows:

"*John Spry Lumber Company.*

"$.......On lumber, lath, shingles, pickets, posts, timber, hardwood flooring, or other merchandise not more hazardous, their own or held by them in trust, or on commission, or sold but not delivered, all contained in their yard, or in buildings, sheds or cars on track in said yard, situated on the east side of Ashland avenue, extending north from the west branch of the south branch of the Chicago river, Chicago, Illinois.

"Other insurance permitted until required.

"Warranted by assured that streets shall be kept clear of lumber; that piles of lumber shall not exceed thirty-five feet in height; that there shall be maintained a clear space of sixty-five feet north of main part of mill."

—and which had been in use for several years in the city of Chicago by the John Spry Lumber Company in effecting

insurance upon its property situated on the east side and was familiar to the agents of said insurance companies at the time and long prior to the time said policies were issued; that when S. F. Requa & Sons applied for said insurance they had with them, or shortly thereafter sent to said insurance companies, respectively, copies of said form in triplicate, one copy of which was attached to the policy delivered to the insured, one copy of which was attached to the binder or office copy retained by the insurance company in its Chicago office, and one copy of which was sent to the insurance company's home office. It would therefore seem clear that if S. F. Requa & Sons were the agents of the John Spry Lumber Company, their agency was limited to procuring insurance on the east side, which would include the entire yard upon the east side of Ashland avenue, and that the insurance was to be issued in accordance with the form which was in the possession of S. F. Requa & Sons and which was delivered to said insurance companies by S. F. Requa & Sons prior to the time said policies were issued, and that the agents of said insurance companies, at the time said policies were issued, had full notice that the policies were to be issued in accordance with the form delivered to them by S. F. Requa & Sons. Mr. Spry testified he gave an order for insurance on the east side, and S. F. Requa & Sons presented to the agents of the insurance companies issuing said insurance a form for insurance on the east side, and the policies were issued upon lumber and other material situated on the east side.

The law is well settled that when a party dealing with an agent has notice of the scope and extent of the agent's authority, especially where the agent is a special agent, and his authority is evidenced in writing, he is bound by such notice, and cannot bind the principal by dealing with such agent beyond and outside the scope of the agent's authority. It is apparent, therefore, if S. F. Requa & Sons applied to said insurance companies for insurance on the east side

upon the form which was in common use for that property, and the insurance companies issued insurance in that form, which was delivered to and paid for by the John Spry Lumber Company, they ought not to be permitted by a court of equity to have the policies thus issued changed so as to cover only a part of the property of the John Spry Lumber Company situated "on the east side," after a fire had occurred, on the ground that S. F. Requa & Sons stated to their agents at the time the insurance policies were issued, that they desired insurance only upon that part of the property of the John Spry Lumber Company situated north of the sixty-five foot open strip and that the form of policy presented by them did not mean what it clearly appeared to mean upon its face, and by reason of the further fact that the rate charged did not cover the property destroyed by fire but only covered property situated north of the open strip.    To reform the policies upon such evidence, and after a fire, would work, or might work, a great injustice upon the John Spry Lumber Company, who, the evidence shows, never authorized S. F. Requa & Sons to take out any insurance except upon its property on the east side and never authorized S. F. Requa & Sons to make the statement that all the insurance they desired was upon property upon the north side of the open strip, and that said John Spry Lumber Company had no notice of the statements claimed to have been made by S. F. Requa & Sons, or that the insurance companies claimed that the policies issued by them only covered property located north of the open strip, until after the fire had occurred and their property located in the mill been destroyed.    If the agents of the insurance companies were misled by S. F. Requa & Sons they ought not to have been misled, as they knew as fully the situation of the property as S. F. Requa & Sons, and were as well acquainted with the form of policy they were issuing as were S. F. Requa & Sons or the John Spry Lumber Company.

While a court of equity will relieve a party from a mistake where the mistake is mutual or when brought about by the fraud of the opposite party, it will not relieve a party from a mistake which is the result of his own negligence. In *Roberts* v. *Hughes,* 81 Ill. 130, it was held a court of equity will not relieve a party from the results of his own negligence when the channels of information are open to him and no fraud or deception is practiced upon him. And in *Farrell* v. *Bouck,* 60 Neb. 771, it was said (p. 773): "Those who suffer in consequence of their own culpable inertness are without remedy. The law aids the vigilant,— not the indolent and listless." The policies were issued several months before the fire occurred, and during the time that intervened between their issuance and the time of the fire copies thereof were in the possession of the insurance companies, and said insurance companies were bound to know what provisions policies issued by them contained and what property they covered, and if they were honestly mistaken as to the property which the policies covered, they should have discovered such mistakes and then moved promptly for a correction of the policies, and not waited until after the property covered by the policies had been destroyed by fire before filing their bill for a reformation of said policies.

It was stipulated in the trial court that the questions of misjoinder of complainants and that the bill was multifarious would not be raised. The Appellate Court considered the case, in view of such stipulation, upon the merits, and we have reviewed the judgment of the Appellate Court upon the merits.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*