## TOKIO MARINE & FIRE INS. CO., Limited, v. NATIONAL UNION FIRE INS. CO.

District Court, S. D. New York.
Jan. 25, 1937.

Morgan & Lockwood, of New York City (Louis J. Wolff and Harding Cowan, both of New York City, of counsel), for plaintiff.

Powers, Kaplan & Berger, of New York City (Abraham Kaplan and George I. Gross, both of New York City, of counsel), for defendant.

PATTERSON, District Judge.

The Tokio Marine & Fire Insurance Company brought an action at law against National Union Fire Insurance Company to recover $187,500 on a policy of reinsurance. The complaint alleged that the Tokio,

having issued a policy to S. H. Kress & Co. covering buildings and contents against loss from earthquake and other causes, obtained a policy of reinsurance from the National Union, such reinsurance being excess reinsurance for the amount of the excess over the first $100,000 due by the Tokio in the case of each loss; that a loss occurred by earthquake in California on March 10, 1933, whereby fifteen buildings of the Kress Company were damaged to a total amount of $287,500; that the Tokio, having paid to the Kress Company the loss in the amount of $287,500, made demand on the National Union for $187,500 under the policy of reinsurance and for certain expenses, but payment was refused.

In amended answer the National Union set up by way of counterclaim and equitable defense, pursuant to section 274b of the Judicial Code (28 U.S.C.A. § 398), that the true terms of the contract of reinsurance were not those expressed in the policy, that either by mutual mistake or by mistake of the National Union and inequitable conduct of the Tokio a clause in the agreement of reinsurance was omitted from the policy, and that the National Union was entitled to have the policy reformed so as to include the omitted clause. Trial of the issues raised by the counterclaim and equitable defense having been ordered in advance of trial of the issues raised by the complaint, the question whether the policy of reinsurance should be reformed was brought to trial on the equity side. Most of the facts are undisputed.

The Tokio Marine & Fire Insurance Company insured S. H. Kress & Co. against loss by earthquake and other risks. The insurance covered some 240 buildings and contents, ran for one year from April 4, 1932, and was for the total amount of $29,-745,000, with a limit of $200,000 on any one building. On April 4, 1932, the Tokio through Johnson & Higgins as its brokers applied to National Union Fire Insurance Company for excess reinsurance. The application was in the shape of a binder prepared by the brokers, offered to the National Union and accepted by the latter. The binder was to the effect that the National Union reinsured the Tokio on the Kress insurance to the amount of $1,000,000, covering buildings, furniture, fixtures, and merchandise, at a premium of $5,000, for one year, binding on April 4, 1932, and until delivery of policy, covering risks of earthquake and other specified hazards. The

binder also provided that the limit of liability was $100,000 by any one loss in any one building and contents, and contained the following excess reinsurance clause: "To pay only the excess over and above $100,000 by any one loss in and/or on any one building and its contents."

It may be noted here that if the contract of reinsurance had remained in the terms expressed in the binder, the National Union admittedly would have had to pay nothing by way of reinsurance. For while an earthquake in California severely damaged a number of Kress buildings on March 10, 1933, causing a loss of $287,500 which the Tokio paid to the Kress Company under its contract of insurance, in no case did the loss on any one building exceed $100,-000.

Some two months later the "form" for the policy of reinsurance, meaning the special terms to be pasted on the ordinary printed policy in use by the National Union, was prepared by the brokers for the Tokio. It was the business practice for the brokers to prepare "forms" for insertion in permanent policies and to submit them to the National Union. In preparing the "form," the brokers came to the conclusion that the risk assumed by the National Union under the binder was unduly narrow, being only reinsurance for excess over $100,000 of any one loss on any one building, and not worth the agreed premium of $5,000. They decided to submit a "form" broadening the risk, so as to make the National Union liable for reinsurance except for the first $100,-000 on any one catastrophe. So the words "in and/or on any one building and its contents" that appeared in the binder were omitted from the "form." The excess reinsurance clause as phrased in the "form" read: "this reinsurance is excess reinsurance and shall not attach until the amount due under the policy No. T40062 of the Tokio Marine & Fire Insurance Company, Limited, of Japan, by any one loss, shall exceed $100,000, and then only for the amount of the excess over and above the first $100,000 due from the Reinsured Company in the case of each and every loss."

The "form," consisting of three closely typewritten pages, was forwarded to the National Union in triplicate on June 29, 1932, without any notice given, other than by the "form" itself, that a change in the terms of reinsurance was being proposed. An experienced employee of the National Union, whose duty it was to examine poli-

cies to be issued, scanned the "form" and came to the conclusion that the words used were the equivalent of the words in the excess reinsurance clause in the binder, that the National Union was to be liable only for amounts above $100,000 by any one loss in any one building. He accordingly passed the "form" as satisfactory, and a policy with the "form" pasted on it was issued by the National Union and delivered to the brokers for the Tokio on July 5, 1932. The National Union later received the agreed premium, $5,000.

It appears that there was no standard premium on a special risk of the sort involved in this reinsurance. It further appears that the brokers in preparing "forms" for policies generally followed the binders, but occasionally departed from them. In cases of departure, their practice was that if they deemed the change to be one of sufficient importance. to be called to the insurer's attention, a new binder embodying the change or a new indorsement on the old binder was submitted to the insurer; if the change was of trifling effect, the "form" for the policy was submitted without other notice than the "form" itself.

The Tokio contends that the excess reinsurance clause in the policy means that the National Union is liable for the loss caused by any one earthquake, except for the first $100,000 of the loss. The National Union, while not conceding that this is necessarily the meaning of the clause in the policy, concedes that the clause is of doubtful meaning, and insists that in any event it is entitled to· have the policy reformed so as to read the same as the binder, that is to say, that the reinsurance was to be only against loss over $100,000 on any one building and contents.

■■ Where there is a preliminary agreement in definite terms, and a formal instrument executed later in· fulfillment of the agreement contains terms materially different, by mutual mistake, a court of equity will rectify the formal instrument to make it conform to the agreement. Hearne v. Marine Insurance Co., 20 Wall. 488, 22 L. Ed. 395; Elliott v. Sackett, 108 U.S. 132, 2 S.Ct. 375, 27 L.Ed. 678; Griswold v. Hazard, 141 U.S. 260, 11 S.Ct. 972, 999, 35 L.Ed. 678; Williston on Contracts, § 1547. In such cases mistake on one side and inequitable conduct on the other that led to the mistake are the equivalent of mutual mistake so far as the right to reformation is

concerned. See Simmons Creek Coal Co. v. Doran, 142 U.S. 417, 435, 12 S.Ct. 239, 35 L.Ed. 1063; Elliott v. Sackett, supra, 108 U.S. 132, at page 141, 2 S.Ct. 375, 27 L.Ed. 678; Page on Contracts (2d Ed.) § 2218; Pomeroy on Equity Jurisprudence (4th Ed.), section 847. The principle has frequently been applied in cases where an insurance policy contains a departure from the preliminary contract of insurance. Equitable Safety Ins. Co. v. Hearne, 20 Wall. 494, 22 L.Ed. 398; Snell v. Insurance Co., 98 U.S. 85, 25 L.Ed. 52; Thompson v. Phenix Ins. Co., 136 U.S. 287, 10 S.Ct. 1019, 34 L.Ed. 408. See, also, Ivinson v. Hutton, 98 U.S. 79, at page 84, 25 L.Ed. 66; Joyce on Insurance, section 3509. It does not matter whether the mistake of the party injured by the departure came from failure to read the instrument or whether it came from a misunderstanding of the meaning of the words used. The latter, though perhaps a mistake of law, is a mistake that may be corrected in a suit for reformation. Griswold v. Hazard, supra; Philippine Sugar Co. v. Government of Philippine Islands, 247 U.S. 385, 38 S.Ct. 513, 62 L.Ed. 1177; Upson Nut Co. v. American Shipbuilding Co. (D.C.Ohio) 251 F. 707; Phoenix Fire Ins. Co. v. Gurnee, 1 Paige (N.Y.) 278, 19 Am.Dec. 431.

■ Here the binder contained the terms of reinsurance agreed on between the parties. The binder was, among other things, an application for reinsurance made by the reinsured and approved by the reinsurer, Muller v. Globe & Rutgers Ins. Co. (C.C.A.2) 246 F. 759, 760, a short method of issuing a temporary policy for the convenience of the parties. Lipman v. Niagara Fire Ins. Co., 121 N.Y. 454, 458, 24 N.E. 699, 8 L.R.A. 719. It contained the heads of agreement on which the forthcoming policy was to be issued, and it fixed the premium at $5,000. In the binder there was a clear and explicit clause for the advantage of the reinsurer, to the effect that there should be no liability for the first $100,000 loss on any one building.

■ When the brokers for the reinsured undertook some months later to draft the special clauses for insertion in the permanent policy, they decided that they had made a poor bargain for .the reinsured, that the risk taken by the reinsurer should have been broader. They drafted a clause designed to broaden that risk, by eliminating the words "in and/or on any one building and its contents." The departure was an

important one. If the reinsured and its brokers are right in their contention as to the meaning of the new clause, the result in the light of later events is a reinsurer's liability of $187,500 instead of no liability. The clauses for insertion in the policy were submitted to the reinsurer without any renewed bargaining and without any comment.

When the reinsurer accepted the tendered clauses and issued its policy containing them, it unquestionably did so under the impression that no change in the risk was being agreed to. The meaning of the excess reinsurance clause in the "form" was not so plain as to render incomprehensible the reinsurer's impression that the clause corresponded in substance to the clause in the agreement for reinsurance. Under the circumstances the reinsurer, having received no adequate notice that a modification against its interest was being proposed, had the right to assume that the instrument submitted to it conformed to the agreement for reinsurance. See Equitable Safety Insurance Co. v. Hearne, supra; Griswold v. Hazard, supra; Connecticut Fire Insurance Co. v. Oakley Improved Bldg. & Loan Co. (C.C.A.6) 80 F.(2d) 717, certiorari denied 298 U.S. 687, 56 S.Ct. 954, 80 L.Ed. 1406; Hay v. Star Fire Ins. Co., 77 N.Y. 235, 33 Am.Rep. 607; German American Ins. Co. v. Darrin, 80 Kan. 578, 103 P. 87.

The case is not one of mutual mistake, unless that expression be taken so broadly as to cover a situation where the formal instrument as executed is a departure from the preliminary contract, intentionally so by one party and mistakenly so by the other. See Elliott v. Sackett, supra, 108 U.S. 132, at page 141, 2 S.Ct. 375, 27 L.Ed. 678. It is a case, however, where an important provision of the contract of reinsurance was omitted from the policy by mistake of the reinsurer brought about by conduct of the reinsured. If mistake on the part of the reinsurer in accepting a departure from the preliminary contract be granted, and as to that mistake there can be no reasonable doubt, it is hard to see how the position of the other party is rendered stronger by reason of the fact that the departure on its part was intentional rather than mistaken. The policy should be reformed by adding to the excess reinsurance clause the words "in and/or on any one building and its

contents," thus bringing that clause into line with the excess reinsurance clause that had been agreed on by the parties in their preliminary contract of insurance.

There was no bad faith or desire to mislead on the part of the brokers or of the Tokio Company. The brokers intended to propose a modification of the contract of reinsurance, but they failed to give the reinsurer adequate notice of their intention.

On the trial an effort was made to prove a course of conduct whereby proposed changes in the terms of binders were submitted by the brokers by the mere submission of "forms." The evidence does not show any such established practice as to proposed changes of the character involved here. On the contrary, the evidence tends to show that as a rule the brokers in drafting "forms" followed the sense of the binder as to risks of insurance, and that when a change of importance was suggested by the brokers, it was the practice to submit a modified binder, thus putting the reinsurer on plain notice that a modification of the contract was being suggested. The explanation of the brokers' conduct in this instance lies in the testimony of the employee who acted for them in the matter, to the effect that he did not deem the suggested change to be an important one, otherwise a modified binder would have been submitted. In his opinion as to the nonimportance of the change, however, he was quite clearly in error.

The reinsured urges that the mistake was due to the negligence of the reinsured in reading the "form." Questions of negligence play almost no part in suits for reformation. Snell v. Insurance Co., supra; Elliott v. Sackett, supra; Moffett, Hodgkins & Clarke Co. v. Rochester, 178 U.S. 373, 384, 20 S.Ct. 957, 44 L.Ed. 1108; Columbian Life Ins. Co. v. Black (C.C.A.10) 35 F.(2d) 571, 71 A.L.R. 128. On this point the case cited by the reinsured, National Union Fire Ins. Co. v. John Spry Lumber Co., 235 Ill. 98, 85 N.E. 256, is against the weight of authority. The reinsured also urges that it relied on the policy as written until after the loss and failed to get reinsurance through other companies. Aside from the fact that no showing was made of ability to get reinsurance on like terms from others, it is the fact that the source of the mistake that was made is

attributable to the reinsured rather than to the reinsurer.

The reinsured is correct on the point that proof of mistake must be of the clearest and most convincing character. I am of the view that the proof of mistake by the reinsurer came up to that standard. The reinsurer laid great stress on the feature of nonliability for the first $100,000 loss on any one building, as expressed in the binder. This is shown by the interoffice communications at the time the binder was placed and by the reinsurer's solicitude in respect to the number of buildings valued at more than $100,000. And there is nothing improbable in the testimony of the reinsurer's employee that he interpreted the form as corresponding to the binder, that otherwise the policy as it stands would not have been issued.

In conclusion, I can see no essential difference between this case and Equitable Safety Insurance Co. v. Hearne, supra. There the parties by correspondence had agreed on insurance on the plaintiff's vessel for a voyage from Liverpool to port of discharge in Cuba, thence to port of loading in Cuba and back to Europe. The policy as issued covered the vessel only from Liverpool to port of discharge in Cuba and back to Europe. The Supreme Court, in holding that the plaintiff after loss was entitled to have the policy reformed, said (20 Wall. 494, at pages 495–497, 22 L.Ed. 398):

"It is not denied that the correspondence between the parties constituted a preliminary agreement. Such clearly was its effect. The policy was intended to put the contract in a more full and formal shape. The assured was bound to read the letters of the company in reply to his own with care. It is to be presumed he did so. He had a right to assume that the policy would accurately conform to the agreement thus made, and to rest confidently in that belief. It is not probable that he scanned the policy with the same vigilance as the letters of the company. They tended to prevent such scrutiny, and, if it were necessary, threw him off his guard. * * *

"In this controversy the clear terms of the preliminary agreement warranted the court below in overruling the departure from it found in the policy."

The defendant's prayer for a reformation of the policy will be granted.