## McBride's Estate

*David Glick, Samuel Kaufman,* and *John F. White,* for exceptants.

*Walter P. Smart,* county solicitor, and *H. M. Montgomery,* assistant county solicitor, for county.

MITCHELL, J., April 3, 1943.—Nathaniel McBride, a resident of Findley Township, Allegheny County, Pa., died intestate on March 28, 1939, and letters of administration on his estate were granted the Commonwealth Trust Company of Pittsburgh.

The decedent and his wife on July 9, 1920, conveyed to the Verner Coal & Coke Company, a corporation created under the laws of Pennsylvania, a tract of coal land in Findley Township aforesaid, and for the payment of the balance of the purchase money the Verner Coal & Coke Company executed and delivered to Nathaniel McBride, the decedent, its bond in the amount of $62,910.25, secured by a mortgage on the coal land.

The Verner Coal & Coke Company subsequently conveyed the coal land, subject to the mortgage, to John A. Bell, and the trustee in bankruptcy of Bell in 1926 conveyed the same to A. D. Robb, subject to the said mortgage. Mr. Robb has since held the coal land as trustee for the Colonial Trust Company, a Pennsylvania corporation, whose place of business is in the

City of Pittsburgh. None of the parties who acquired title to the land subsequent to the Verner Coal & Coke Company assumed the payment of the mortgage debt. The Verner Coal & Coke Company, after it sold the land to Bell, was merged with the Carnegie Coal Company and its property and assets became the property of the Carnegie Coal Company. The latter company in 1925 was placed in the hands of a receiver and its assets sold at public sale.

On April 17, 1942, under order of this court, a compromise was effected between the Colonial Trust Company and the executor of the McBride estate, by which the principal of the bond and mortgage was reduced $10,000, that is; to $52,910.85, which was then paid and the mortgage satisfied of record.

The question now arises over claims filed by the Commonwealth of Pennsylvania and the County of Allegheny for personal property tax. The Commonwealth's claim is for tax assessed against the estate of decedent for the years from 1938 to 1942, inclusive, amounting with interest to $1,223.87. The claim of the County of Allegheny is for taxes for the years 1937 to 1942, inclusive, totaling $1,476.18. The County of Allegheny also claims the amount of $357.07 for personal property tax for the year 1936, for which a lien has been duly filed. McBride filed his return for 1936 and in it included the mortgage referred to, but claimed there was no tax payable thereon by him. His claim was disallowed and no appeal was taken from the decision imposing the tax. No returns of personal property for the years from 1937 to and including 1942 were filed by the decedent or his executor.

The estate contends the claims are not valid since the personal property in question was subject to the corporate loans tax. On the other hand, the claimants contend the obligation was one on which a corporate loans tax could not be collected as provided by the Act of June 22, 1935, P. L. 414, sec. 17, as amended.

The county personal property tax is imposed by the Act of June 17, 1913, P. L. 507, sec. 1, as most recently amended by the Act of July 29, 1941, P. L. 548, sec. 1, 72 PS §4821, on ". . . all loans issued by any corporation, association, company, or limited partnership, created or formed under the laws of this Commonwealth or of the United States, or of any other state or government, including car-trust securities and loans secured by bonds or any other form of certificate or evidence of indebtedness, whether the interest be included in the principal of the obligation or payable by the terms thereof, except such loans as are made taxable for State purposes by section seventeen of the act, approved the twenty-second day of June, one thousand nine hundred thirty-five (Pamphlet Laws, four hundred fourteen), as reënacted and amended . . ."

The State personal property tax is imposed by the Act of June 22, 1935, P. L. 414, sec. 3, as amended, 72 PS §3244, on all loans issued by any corporation, under the same terms as in the Act of June 17, 1913, P. L. 507, above quoted.

The Act of June 22, 1935, P. L. 414, sec. 17, as reenacted and amended by the State Personal Property Tax Act of July 11, 1941, P. L. 361, 72 PS §3250-10, provides as follows:

"All scrip, bonds, certificates, and evidences of indebtedness issued, and all scrip, bonds, certificates, and evidences of indebtedness assumed, or on which interest shall be paid by any and every private corporation, incorporated or created under the laws of this Commonwealth, or the laws of any other state or of the United States and doing business in this Commonwealth and having a resident corporate treasurer therein, except first class or nonprofit corporations, are hereby made taxable for State purposes . . . Provided, That whenever, under the provisions of this section, any private corporation shall become liable for such taxes upon evidences of indebtedness by it as-

sumed, or on which it shall pay interest, it shall be the duty of such corporation not later than ten (10) days thereafter, to give notice, in writing, to any person who may, at such time, be liable for the payment of any taxes upon such evidences of indebtedness, under the provisions of the third section of this act, that the corporation has assumed such indebtedness, or the payment of the interest thereon, and will deduct and pay the taxes imposed thereon by this section . . .

"It is the intent of this act that all scrip, bonds, certificates, and evidences of indebtedness, made taxable under this section, are not taxable under the third section of this act, and that only such scrip, bonds, certificates, and evidences of indebtedness, which cannot be made taxable under this section, are to be taxed under the third section of this act."

The Colonial Trust Company paid interest on the mortgage to McBride from 1926 to 1931, but no interest was paid thereafter. It is clear that, if the bond and mortgage in question had been assumed by the Colonial Trust Company as the real party in interest or if it had continued to pay interest on the obligation, the corporate loans tax under the above - recited section should have been deducted by that company.

However, the Colonial Trust Company never assumed personal liability for the indebtedness or assumed its payment. Neither on this ground nor on account of its having paid interest as above set forth can the Colonial company be compelled to pay the taxes in question: Elliott v. Sackett et al., 108 U. S. 132.

In Metropolitan Bank v. St. Louis Dispatch Co., 149 U. S. 436 (1893), Mr. Chief Justice Fuller for the court said (p. 447) :

"It is admitted that there was no express or direct promise on the part of the defendant to pay the mortgage debt, and it cannot be held that the mere purchase of premises subject to a mortgage renders the pur-

chaser personally liable to the mortgagee, as having assumed to pay it, or that the mere payment of interest in itself imposes that liability."

Section 17 of the Act of June 22, 1935, P. L. 414, reads that only bonds which cannot be "made taxable" under the section dealing with corporate loans are to be taxed under the provision establishing the personal property tax. In Alison's Estate, 338 Pa. 194, it was held that the phrase "made taxable" as used in the act means not only imposition of the tax but in addition the ability to enforce liability therefor. In that case Mr. Chief Justice Schaffer states (p. 196) :

"Accountant argues that the tax is imposed by section 17 and the fact that it cannot legally be collected by the State is immaterial. This was not the intention of the legislature. A reading of the act demonstrates that the intention was that if the tax could be collected directly from the corporation, then it was to be collected under section 17 for State purposes, whereas if, for any reason, the State could not legally enforce collection of the tax from the corporation, then the county was to have the right to assess a tax on the bonds in the hands of the resident owner under section 1. This is evident by reason of the amendment to section 17 enacted on July 15, 1919, P. L. 955, which reads: 'It is the intent of this act that . . . only such scrip, bonds, certificates, and evidences of indebtedness which cannot be made taxable under this section are to be taxed under section one (1) of said act.' "

The State could not legally enforce collection of the corporate loans tax from the Colonial Trust Company, which has been the real owner of the coal land since 1926, for as has been said it had not assumed the indebtedness or paid interest for the years for which tax is claimed. In this situation the county and the Commonwealth are entitled to collect from the owner of the obligation the personal property tax due each. In Alison's Estate, supra, the reason for not enforcing

collection was the fact that the treasurers of the corporations issuing the bonds were nonresident, but the opinion holds if the State "for any reason" cannot legally enforce collection of the corporate loans tax from the corporation then the Commonwealth and the county have a right to assess a tax on the obligation in the hands of the owner. To hold otherwise would be to allow this bond and mortgage to go tax free and would nullify the plain intention of the statute.

The decedent having failed to petition for a reassessment and taking no appeal within the time fixed for appeal, the tax for 1936 must stand. Consideration of the law and evidence in this case leads us to the conclusion that the claims of the Commonwealth of Pennsylvania and County of Allegheny, respectively, should be allowed.

The exceptions will be dismissed.