(82 App. Div. 86.)

## PEOPLE v. HACKETT.

(Supreme Court, Appellate Division, First Department.   April 17, 1903.)

1. LARCENY—MISAPPROPRIATION BY AGENT—EVIDENCE.

Evidence on prosecution for larceny by misappropriation as agent or bailee *held* to support a verdict of guilty by showing that defendant obtained money by holding out an inducement of profitable investment in real estate, but, instead of investing it as authorized, misappropriated it.

2. SAME—ADMISSION OF EVIDENCE—CURING ERROR.

Error in admission, on prosecution for larceny, of evidence of like representations to another person to obtain money from her, is cured by striking out the evidence, and directing the jury to disregard it, it being immaterial to the issue as finally clearly submitted.

3. CRIMINAL LAW—REMARKS OF PROSECUTING ATTORNEY—HARMLESS ERROR.

Refusal of the court, on a prosecution for larceny, to instruct the jury to disregard the remarks of the prosecuting attorney in his opening that defendant made like representations to another to obtain money from her, will not be held prejudicial, subsequent evidence of such representations having been stricken out, they being immaterial on the issue as submitted, and defendant not having renewed his motion as to the remarks.

4. SAME—EXAMINATION OF DEFENDANT BY COURT.

Examination of defendant at length by the court, after that by the attorneys, which left the evidence on some of the points indefinite and conflicting, not having opened up any new subject or put questions in a prejudicial form, will not be prejudicial.

McLaughlin, J., dissenting.

Appeal from Court of General Sessions of New York County.

Orlando J. Hackett appeals from a judgment of conviction of grand larceny in the first degree and from orders denying a motion for new trial and a motion in arrest of judgment.   Affirmed.

The indictment charges, in the first count, a common-law larceny in obtaining possession of three $1,000 bonds of the Chesapeake & Ohio Railway Company, owned by Mrs. Emma Butler; and the second count charges the defendant with having misappropriated the proceeds of these bonds as agent or bailee.   There is no dispute in the evidence as to the fact of the defendant receiving and selling these bonds, the sole question being whether his disposition of the proceeds was in accordance with the directions of Mrs. Butler or not.   The bonds were sold on three different dates by the defendant for Mrs. Butler, the aggregate amount received for them apparently being about $2,560, from which different sums, amounting to $200, were received by Mrs. Butler, leaving a balance of $2,360 in the hands of the defendant.   Mrs. Butler testified that she and her husband first became acquainted with the defendant in the summer of 1898 at Atlantic Highlands; that her husband often met him on the boat going to and from the city; that this acquaintance grew into friendly social relations, and in the fall the defendant frequently called on them in the city, and in the latter part of November or first of December took Mr. Butler as a partner in a firm with himself, formed for the purpose of engaging in the real estate business.   About the middle of December the Butlers moved, and a few days later the defendant took apartments in the same house with them, and visited their rooms almost every evening.   Mrs. Butler says the defendant told her he had $22,000 invested in real estate, talked to her about the business very often, and told her it was a good thing to put money in; that about the middle of December she, desiring to sell one of her bonds, asked the defendant to sell it for her, which he did, and to invest the proceeds; that shortly after this defendant handed her $50, which he said was a bonus which he had obtained by loaning the money to a man who wanted to borrow it very badly; that during the latter part of December the defendant told her that he had inside information from Mr. Cuyler, a Wall street broker, that the Chesapeake & Ohio Railway was going to

"smash," and that, if she desired to get her money back, she had better sell her bonds at once, and that she thereupon gave him another bond to sell, and invest the proceeds in the same way; that early in January the defendant made more emphatic representations to her concerning the breaking up of the Chesapeake & Ohio Company, and she gave him the third bond to sell on January 3, 1899. Her testimony clearly indicated that she intrusted the money to the defendant to invest in real estate, and not in business. Mrs. Butler further testified that she went to the defendant, and told him that she wanted to use $50 more, and that he advised her not to take the money, as it was doing well, and that her husband would support her (evidently meaning that it was unnecessary); that she asked him several times, with the same result, and finally, on the afternoon of March 26th, she said to him that, while she trusted him thoroughly, she wanted to have some ready money, and wanted to have her money in the bank, and asked him how he had invested it; that he told her he had invested it, with some of his own, in an $8,000 mortgage, and that he would make it satisfactory to her if she would call at his office, but instead of doing this she went to her attorney; that on March 28th the defendant came to her, and stated that he had had a communication from the lawyer she had been to, and told her that if she did not stop going to a lawyer she would never get a cent of her money back, and if she would come to him he would make things satisfactory; that she promised to come to him on the following morning, but went to her lawyer, Thomas W. Rowlette, again, instead, and that the defendant came to the lawyer's office in response to a telephone call. Her attorney testifies concerning the interview which then took place, that he asked the defendant what he had done with her money; that the defendant declined to tell him; that he then turned to the complainant, and asked her if she authorized him to make this inquiry, and, after she said that she did, the defendant said that he had invested it with some of his own in real estate, but declined to tell where, and that, upon being threatened with arrest, he jumped up, and left the office, saying that he would get the securities. This is substantially corroborated by Mrs. Butler. The attorney further testifies that five or six minutes after this the defendant called him up on the telephone, and said: "For God's sake, don't have me arrested. It will ruin me. I spent that money. I got in a close place, and I spent her money. But I have influential friends, and I can get the money, and by eleven o'clock to-morrow morning you shall have the money at your office for Mrs. Butler." The complainant further states that on the evening of the day following this last interview she received by mail a certificate for 24 shares of stock of the Metropolitan Trading Company—a corporation recently formed, with her husband as treasurer and the defendant as president; that nothing had been said to her about this company by the defendant. Cornelius C. Cuyler, called as a witness by the people, testified that he never mentioned anything about the Chesapeake & Ohio to the defendant.

The defendant testified in his own behalf that Mrs. Butler gave him the money to use as he saw fit to further the interests of the firm business, and he is corroborated by his mother, who testifies that the complainant told her that she intended giving her money to the defendant to help the business along; but this is controverted by the testimony of Mrs. Butler. The defendant further testifies that the complainant sold the second bond against his advice, and insisted upon putting the money in the business the same way; that she placed this confidence in him because he had helped her husband to the means of earning a living, which, he says, she stated was more than their relatives had done. It appears from defendant's testimony that the principal efforts of this firm had been expended in endeavoring to get before the public, and that they were not then trying to do much business, and the only actual transaction of the firm that he is able to recall is that of obtaining a $1,900 mortgage for a woman whose name and address he is not sure of and does not give. This firm had no bank account, and only earned a few hundred dollars in the three or four months that it existed. The defendant used all the firm's money in payment for advertising, clerk hire, and the general expenses of running the firm's business, including payment of $400 or $500 to Mr. Butler, and had purchased no land, mortgages, or

other securities with it. He claims that the complainant had great faith in the Metropolitan Trading Company's stock and wanted her money transferred to that; and, as the money was tied up in the real estate business, and cash must be paid for the only stock of the company left, he agreed, because she had been very kind to him and to the business, to give her sufficient of the stock held by him to equal the amount that she had put in the business, and adjust it later with the business when it was in funds. Defendant denies having had a telephonic conversation to the effect, as testified to by Rowlette, or that he told complainant that the Chesapeake & Ohio was going to smash, or that Cuyler told him so, or that he had invested her money in an $8,000 mortgage. He states that he did talk with Rowlette over the telephone, and told him that complainant could get her securities, or he would deliver them; and he says that Rowlette did not ask him about securities, but only about money. He further states that it was about the 1st of March when complainant told him to make this transfer to the stock of the Metropolitan Trading Company; but when asked why he did not mention this definite arrangement in his letter sent with the certificate of stock on March 30th, in which he states that he has put her money in this stock, he says that he was flustered, and could not bring his mind down to what he wanted to say in a letter, and that she had promised to give him some of the money. It appears from the defendant's testimony that this Metropolitan Trading Company was organized with a capital stock of $25,000, of which only $1,000, at most, had been paid in in money; that he had no financial basis. He does not give any clear explanation of the purpose of its organization, and his testimony is inconsistent on this subject, and not reconcilable with that of the attorney who acted in incorporating the company, and with the proceedings of the corporation as shown by the minutes of the directors' meetings.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Lewis Stuyvesant Chanler, for appellant.
Robert C. Taylor, for the People.

LAUGHLIN, J. The first contention of the appellant is that the verdict was not warranted by the evidence. We think there was not only sufficient evidence to require the submission of the question of defendant's guilt to the jury, but that the verdict is amply sustained by the evidence. A careful examination and consideration of this record satisfies us that the guilt of the defendant was clearly established. He obtained the complainant's money by holding out an inducement of profitable investment in real estate. He did not invest it as authorized, but wrongfully misappropriated it.

The next assignment of error by counsel for the defendant relates to a statement of the assistant district attorney, in opening the case to the jury, that the defendant had committed a similar crime at about the same time, and to evidence offered and received on that subject, which was subsequently stricken out. The assistant district attorney, in opening the case, after stating the charge against the defendant for which he was on trial, said that a second indictment had been found against him for grand larceny in the second degree, consisting of a similar larceny for the same purpose; that the people would show that after the defendant obtained the money from Mrs. Emma Butler, he obtained $300 from Mrs. Hannah Butler, her mother-in-law, on like representations; that the people would show this for the purpose of showing motive; that it was one and the same scheme to defraud both parties; and that he brought the mat-

ter to the attention of the court in his opening "in order that he might not transgress the bounds of propriety in mentioning the circumstance." Counsel for the defendant thereupon remarked, "Upon its face it appears that these two crimes occurred eight days apart," and he "could not understand the attitude of the district attorney in suggesting that on the trial of an indictment charging the commission of an offense on the 3d day of January he could offer evidence of a crime which the indictment itself charges was committed on the 11th day of January." The court directed the district attorney to proceed, which he did, and upon his commencing to state defendant's transaction with Mrs. Hannah Butler, counsel for the defendant objected, and, upon the court's directing the district attorney to proceed, took an exception. The district attorney then stated, in substance, that he expected to show that shortly after the defendant obtained the money from the complainant he called upon Mrs. Hannah Butler, who had saved up $300, which she had in the savings bank; asked if she had any money, and, upon being told that she had, and where it was, said that it was a mistake to have it in a savings bank; that, if she would let him take it, and invest it in real estate, she would do "a great deal better"; and that upon the next interest day she drew it from the bank, and delivered it to the defendant. But he did not inform the jury what the defendant did with this money. After the complaining witness was sworn, counsel for the defendant requested the court to strike from the record "all that portion of the district attorney's opening statement which referred to transactions with Mrs. Hannah Butler in regard to a $300 transaction," and asked the court to instruct the jury to disregard that matter, to which the court replied, "For the present I will deny the motion, Mr. Chanler;" and counsel for the defendant excepted. Mrs. Hannah Butler was called as a witness for the people, and, under defendant's objection and exception, was permitted to testify that in the early part of January the defendant came to her room, and asked if she had any money, and, on being told that she had a little, asked about how much, and was informed she had a couple of hundred dollars in the savings bank, whereupon he stated that the bank did not pay much interest, and that, if she would let him have it to invest in real estate, with some of his own, he would give her a great deal more, and any time she wanted it he would bring it to the house, the same is if it was in the bank; that she told him she could not let him have it then, that she wanted to have the interest marked on it; and that this was the entire conversation. The court thereupon, of its own motion, directed that the testimony be stricken out, and that the jury disregard it; but, upon counsel for the defendant starting to object, offered to let it remain in if he desired. A discussion then ensued between counsel and the court, in which the assistant district attorney contended that the evidence was competent; and the court suggested that it might be, if the first count charged a larceny by false representations, which it did not, and stated that at the proper time the people would have to elect whether they desired to stand upon the first or second count of the indictment. The assistant district attorney then said the people would elect to stand

upon the second count, but the court replied it was not necessary for them to make an election at that time. The court then remarked that this evidence was not admissible upon either count, but that, if counsel for the defendant so desired, it would be permitted to remain in the case. Counsel for the defendant then said, "The defendant is making no motion or suggestion further than he has already made," to which the court replied, "Then I will simply reiterate my ruling that the testimony be stricken from the record, and the jury will disregard it as far as this witness is concerned." Counsel for the defendant did not renew his motion to have the opening remarks of the district attorney stricken from the record, and the record discloses nothing further concerning said remark or this evidence.

At the close of the evidence the people withdrew the first count of the indictment, and elected to go to the jury on the counts charging misappropriation as a bailee or agent. The learned recorder, in submitting the case to the jury, clearly instructed them that the defendant came into possession of these bonds and their proceeds lawfully, and that the sole question for their determination was whether the people had satisfied them by a preponderance of evidence, beyond a reasonable doubt, that these bonds were delivered to the defendant under authority to sell and invest the proceeds in real estate, in disregard of which he appropriated them to his own use, with intent to deprive Mrs. Butler of her property, and, if not, that it was their duty to acquit the defendant. It was therefore immaterial how or by what representations the defendant obtained possession of the bonds or their proceeds, and we think that this was made clear to the jury. The evidence being immaterial to the issue as finally clearly submitted to the jury, we think the error in admitting it was cured by striking it out and directing the jury to disregard it. People v. Wilson, 141 N. Y. 185, 191, 36 N. E. 230. It is evident that the court, on reaching the conclusion that the evidence concerning the transactions with Mrs. Hannah Butler was inadmissible, would have directed the jury to disregard the remarks of the district attorney on that subject, had the motion been renewed; and if counsel for the defendant deemed those remarks prejudicial, in view of the subsequent ruling of the court in striking out the evidence and in charging the jury, we think he would have again drawn the matter to the attention of the court.

The defendant, on being called as a witness in his own behalf, was examined at considerable length both in his direct, cross, redirect, and recross examination; but the evidence upon some of the points upon which he was examined was left quite indefinite and conflicting. The court then, evidently for the purpose of having the facts shown more definitely and clearly, proceeded to question him at considerable length. The examination conducted by the attorneys covers about 40 pages of the printed record, and that conducted by the court about 9. It is not claimed that the court opened up any new subject in this examination, or that the questions were put in a prejudicial form. It is contended, however, that this was an abuse of discretion on the part of the court in interrogating the witness at such length, and that it may have led the jury to infer that the

court deemed the defendant guilty.   The learned recorder repeatedly instructed the jury that they were sole judges of the facts, and that the function of the court was merely to instruct them as to the law. While in this case we do not think the conduct of the judge in conducting the examination requires a new trial, it is not to be commended.   It is often necessary, proper, or advisable for a judge to interrogate a witness for the purpose of making the evidence clear upon a point upon which it has been left obscure or confused, or to bring out material facts apparently within the knowledge of the witness, and overlooked by counsel; but this may ordinarily be done by very few questions, and, in the main, the counsel should be left to conduct the examination.   Bolte v. Third Ave. R. Co., 38 App. Div. 234, 56 N. Y. Supp. 1038.

The other points presented by the appellant have been examined, but require no special consideration.

It follows that the judgment should be affirmed.   All concur, except McLAUGHLIN, J., who dissents.