(85 App. Div. 556.)

PEOPLE v. WALKER.

(Supreme Court, Appellate Division, First Department. July 7, 1903.)

1. GRAND LARCENY—EVIDENCE—SUFFICIENCY.
    Evidence considered, and *held* to sustain a conviction of grand larceny in the first degree.
2. CRIMINAL LAW—PAROL EVIDENCE—VARYING CONTRACT.
    The rule that parol evidence is not admissible to vary or contradict a written instrument has no application in a criminal case.
3. SAME—INSTRUCTIONS.
    A charge that the testimony offered by the people goes to show a certain fact was equivalent to saying that it tended to show such fact, and was not prejudicial to defendant.
    Ingraham, J., dissenting.

Appeal from Court of General Sessions, New York County.

Chauncey W. Walker was convicted of grand larceny, and appeals Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

Charles E. Le Barbier, for appellant.

Robert C. Taylor, for the People.

McLAUGHLIN, J.  The defendant was convicted of the crime of grand larceny in the first degree, and sentenced to state's prison for an indeterminate term of not less than two nor more than three years, and he has appealed from the judgment and orders denying motions in arrest of judgment and for a new trial.  83 N. Y. Supp. 207.

It is urged that the judgment and orders should be reversed, principally upon the ground that the verdict of the jury was not warranted by the evidence.  After a careful examination of the record I am satisfied that at the close of the trial the evidence was not only sufficient to require the submission of the defendant's guilt to the jury, but that it sustained their verdict.  The indictment contained three counts, each of which charged in substance, though in a different way, that the defendant, on the 29th day of June, 1901, stole from one Cavanaugh, the complaining witness, $900.  The testimony offered by the people at the trial to sustain the charge set out in the indictment was substantially as follows:

Some time prior to the 29th of June, 1901, Cavanaugh, through an advertisement which appeared in the New York Herald, met the defendant, who then informed him that he represented the Policy Holders' National Union of Chicago, an Illinois corporation whose business was to investigate insurance policies to determine whether they were correct in form and issued by responsible companies; that such corporation would like to engage a general agent for the states of New York, New Jersey, and Connecticut; that it was "virgin territory," no business having been done by it therein; that if Cavanaugh would accept the position he should have the sole agency of such states, and receive a salary of $150 per month, after deducting certain expenses, and in addition thereto 20 per cent. commission on all the business which he did; that he would be required to furnish a bond for $2,500 to guaranty the faithful performance of his duties.  The defendant, on being informed that such bond would be furnished, said that was not what they wanted; that the corporation had adopted the system "laid down by Mr. Lipton and Mr. Andrew Carnegie, and some of the large concerns throughout the world," which was that an agent should purchase stock of the corporation, and the money paid on such purchases would be put in a trust fund, and when they severed their connections, the money would be returned; that is, the corporation would redeem the stock.  Cavanaugh said he would take the matter under consideration, and defendant then informed him that he had better connect himself with the corporation at once, or he would lose the chance, inasmuch as there were several others who wanted the position.  Cavanaugh subsequently visited Chicago, and had a talk with the president of the corporation, and also with the defendant's

brother, who was the secretary and treasurer. Thereafter he received a communication from the defendant, and other interviews took place, as the result of which Cavanaugh agreed to accept the position and made a deposit of a check for $100, which, at the defendant's suggestion, was sent direct to the corporation at Chicago. A few days later the defendant wrote Cavanaugh, asking for an interview, and saying that he had the "contract, certificates, and supplies," in response to which Cavanaugh, on the 29th, met the defendant, and told him that it was impossible to raise $2,500, and that the best he could do was to take $1,000 worth; and defendant replied: "Well, * * * our company won't object to that," but "we would like the money in cash." On being informed by Cavanaugh that he could not give the cash, but would give a check, he answered: "Well, let me have the check." A check for $900 was thereupon given, payable to the order of the corporation. The contract was then signed, and the certificates of stock delivered. The defendant immediately had this check certified, and forwarded it to the corporation, by whom the same was collected; and it is the money obtained by means of this check that the defendant is charged with stealing. After this check was delivered, the defendant, in connection with Cavanaugh, engaged an office, into which was put furniture of small value, and then the defendant disappeared, promising to return in a few days to instruct Cavanaugh how to conduct the business. He did not return, nor, so far as appears, was he again in the state, until he was, by artifice, induced to come, when he was placed under arrest. Scarcely had Cavanaugh opened his office and held himself out as having the exclusive agency of the states of New York, New Jersey, and Connecticut, when he ascertained that there were several others who held similar appointments in those states, whereupon he severed his connection with the corporation, and endeavored to have the money he paid returned; but all of his efforts in this direction were futile, and the corporation itself, shortly thereafter, ceased to do business, and a receiver was appointed. Testimony was also offered to the effect that, when the defendant was arrested, he admitted that the complaining witness had been robbed, and said to the officer who had him in charge:

"I am prepared in 30 minutes to give him back his money. That is all he wants."

If the testimony of the people's witnesses was true, I do not see how it can be seriously questioned but what the defendant was guilty of the crime for which he was indicted. Cavanaugh had been deprived of his property by the fraudulent scheme or device of the defendant, and the jury had the right to find that this had been done by the defendant for the purpose of appropriating such property to his own use or that of the corporation which he represented. Larceny, as defined by section 528 of the Penal Code, embraces every act which was larceny at common law, besides other offenses which were formerly indictable as false pretenses or embezzlement. The offense of larceny at common law is established by proof on the part of the prosecution showing that the defendant obtained possession of the property by some trick, fraudulent device, or artifice, with the in-

tention of appropriating it to his own use or that of another. People v. Miller, 169 N. Y. 339, 62 N. E. 418, 88 Am. St. Rep. 546. It is true the defendant denied, and he was corroborated in some respects by other witnesses, that he made any false representations to Cavanaugh, that the money represented by the checks would be held in trust, that on Cavanaugh's severing his connection with the corporation the money would be returned to him, or that he was to have the exclusive agency of the states named. He also denied that he ever received any of the money, or that he made the statement attributed to him at the time of his arrest. But the jury were not bound to believe him or his witnesses, and that they did not is evidenced by their verdict. There being sufficient evidence to sustain it, and we being satisfied of the defendant's guilt, it ought not to be disturbed. People v. Miller, supra; People v. Hackett, 82 App. Div. 86, 81 N. Y. Supp. 718.

It is also urged that the court erred in admitting testimony as to what took place between the defendant and Cavanaugh prior to the time the contract between Cavanaugh and the corporation was signed; and in this connection our attention is called to the rule that parol evidence is not admissible to vary or contradict the terms of a written instrument. But this rule has no application in a criminal case. People v. Barringer, 76 Hun, 330, 27 N. Y. Supp. 700. In the case just cited the recorder excluded testimony upon the ground that the same was inadmissible under this rule, but on appeal the judgment was reversed; Van Brunt, P. J., saying:

"It is clear that in the case of a criminal prosecution the rule applied by the learned Recorder cannot prevail. The question is as to the felonious intent of this defendant, and she cannot be precluded from showing that such felonious intent did not exist simply by the production of a paper wherein she has written or signed something inconsistent with her claim of the nonexistence of the felonious intent. She is not estopped by any such writing. The jury have a right to consider the writing in determining the question as to the credibility of the witness and the weight to be given to the testimony, but there is no ground in a case of that description for the application of the rule that parol evidence cannot be offered to rebut the evidence of felonious intent."

Nor do I find any error in the charge. A fair construction of it as a whole does not justify the criticism made upon it by the appellant's attorney. When the court said that the testimony offered by the people goes to show that certain representations were made to the complaining witness that were untrue, it was equivalent to saying that such testimony tended to show, and must have been so understood by the jury. No exception was taken to it, and I am satisfied that the defendant's rights were not prejudiced by it. He had a fair trial, the jury found him guilty, and the evidence sustains their finding.

The judgment of conviction, and the orders denying the motions for a new trial and in arrest of judgment, must be affirmed.

VAN BRUNT, P. J., and O'BRIEN and HATCH, JJ., concur.

INGRAHAM, J. (dissenting). As I view the evidence in this case, as a whole I do not think it was sufficient to justify a conviction. The

defendant, as the agent of a corporation, induced Cavanaugh, the complainant, to purchase stock in the corporation and to pay therefor the sum of $1,000; the corporation appointing the defendant its agent. The complainant purchased that stock, paid the $1,000 to the corporation, and the conviction of the defendant is based upon that transaction. It is proven without contradiction that the defendant failed to profit in any way by the transaction, that a portion of the money paid to the defendant was paid directly to the corporation, and that the balance was paid by a check which was sent to the corporation and collected by it. A contract creating the defendant an agent of the company was executed, and the complainant received the stock that he had purchased. I do not think that this is sufficient to sustain a finding that the defendant, "with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to use of the taker, or of any other person, * * * by color or aid of fraudulent or false representation of pretense," took from the possession of the complainant any money or personal property. Pen. Code, § 528.