Commonwealth *v.* Sherman, Appellant.

320

Argued September 26, 1956. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (HIRT, J., absent).

*Samuel Kagle,* for appellant.

*Thomas M. Reed,* Assistant District Attorney, with him *Victor H. Blanc,* District Attorney, *F. Emmett Fitzpatrick, Christopher F. Edley,* and *Francis A. Biunno,* Assistant District Attorneys, and *James N. Lafferty,* Deputy District Attorney, for appellee.

OPINION BY WRIGHT, J., November 13, 1956:

Albert Jay Sherman was indicted in the court below on a charge of fraudulent conversion, as proscribed by Section 834 of The Penal Code. Act of June 24, 1939, P. L. 872, 18 PS 4834. He pleaded not guilty, waived jury trial, and was convicted by the trial judge. A motion in arrest of judgment was overruled, sentence was imposed, and this appeal followed. The factual situation is set forth in the following excerpt from the lower court's opinion:

"In the summer of 1951, the prosecutors, husband and wife, contacted the defendant for the purpose of purchasing a taproom with living quarters. Thereafter, the defendant took them out to inspect a few such places. Commencing in December 1951, and beginning with a deposit of Ten Thousand Dollars ($10,000), the prosecutors began to turn over periodically, sums of money ranging from One Thousand Dollars ($1,000) to Eighty-seven Hundred Dollars ($8700) until by January of 1954 the sums deposited with the defendant totaled Thirty-three Thousand Five Hundred forty-seven Dollars ($33,547). The money had been paid over to the defendant at his request so that he would have available a sum of money necessary to consummate the desired purchase. On the ten occasions when moneys were so paid over, defendant issued a post-dated check drawn on his account in the Broad Street Trust Company of Philadelphia in the amount of the money received, plus 6% per annum interest and a 10% pre-

mium. The receipts set forth that the money was turned over to the defendant to be invested by him on behalf of the prosecutors, but they testified that the defendant was informed that they did not desire to make any loans and that their sole purpose was to purchase the taproom. Defendant told them that this was merely a bookkeeping transaction and that no loan was intended. In each instance, prior to the maturity date written on the check, defendant would issue a new check taking back the old one before it could be presented to his bank for payment. He informed the complainants from time to time that these checks were not to be cashed but were investment checks. While he took the complainants out to see several properties, he always suggested some reason why the purchase should not be made.

"In the middle of February 1955, more than three years after the initial deposit, the prosecutors made a demand upon the defendant for the return of their money because he had not found a taproom for them, and in March of 1955 they consulted an attorney. Upon demand from the attorney to return the money, defendant replied that he had used the funds and could not return them. Thereafter, he did return the sum of Six Thousand Four Hundred Thirteen Dollars and twenty-three cents ($6,413.23), and assigned over to the prosecutors various interests in real estate the value of which has not yet been ascertained but which certainly does not approach the sums advanced by the complainants".

Appellant first contends that "The documentary evidence introduced by Commonwealth establish that the dealings between the parties were loan transactions, which cannot sustain the criminal charge of fraudulent conversion". He relies upon *Commonwealth v.*

*Bixler,* 79 Pa. Superior Ct. 295, which holds that one who borrows money cannot be convicted of fraudulent conversion of the funds loaned to him, even though he may have had no intenton to repay. It is appellant's position that the receipts which he gave the Nachtsheims, and which were introduced as exhibits, clearly show that the deposits were given to him as loans. Disregarding for the moment the testimony of the Nachtsheims in this connection, our examination of the exhibits in question refutes appellant's contention. Uniformly they recite the receipt of certain sums "to be loaned *by* Sherman" (italics supplied). Moreover, a written statement subsequently given by appellant to private counsel for the Nachtsheims expressly acknowledges that the sums so deposited "were intended and understood by them and me to be placed in my custody for the purpose of my investing the same in their behalf and for their account". Considering only the receipts and the written statement, it is clear that appellant was guilty of fraudulent conversion in misapplying the money. See *Commonwealth v. Shutts,* 163 Pa. Superior Ct. 415, 62 A. 2d 82.

In any event, the learned trial judge believed the testimony of the Nachtsheims that the money was not given for investment, but for the purpose of creating a fund to be applied toward the purchase of a taproom and dwelling, and that they complained about, and were not bound by, the wording of the receipts. Appellant argues that, under the parol evidence rule, this oral testimony was insufficient to contradict the express terms of the written instruments, citing the well-known case of *Gianni v. Russell & Co., Inc.,* 281 Pa. 320, 126 A. 791, also *Wagner v. Marcus,* 288 Pa. 579, 136 A. 847. Passing the Commonwealth's contention that the parol evidence rule was never intended to be

applied in criminal prosecutions, it is clearly inapplicable where fraud is alleged: *Tonkin v. Tonkin,* 172 Pa. Superior Ct. 552, 94 A. 2d 192. And see *Commonwealth v. Willstein,* 146 Pa. Superior Ct. 357, 22 A. 2d 613.

Appellant's second contention is that "even if the Commonwealth proved a criminal act it was not the offense charged in the indictment". His position in this regard is that, if anything, the Commonwealth proved the crime of cheating by fraudulent pretenses, proscribed by Section 836 of The Penal Code (18 PS 4836), rather than the crime of fraudulent conversion.[1]

---

[1] In *Pearl Assurance Co. v. National Insurance Agency,* 151 Pa. Superior Ct. 146, 30 A. 2d 333, President Judge KELLER made the following pertinent analysis:

". . . Commonly known as *fraudulent conversion,* it is not confined to cases of *conversion* following a supposititious finding, or *trover,* and hence is not limited to cases where the duty rested on the defendant to deliver to the owner the identical property, coin, bank-notes, etc., which he received. It applies as well to cases where property, securities, etc. were placed with the defendant with authority to deliver or dispose of them and collect or receive the proceeds for the owner, and he fraudulently withholds, converts or misapplies the property or the proceeds derived from the sale or other disposition thereof.

"It was designed to cover those border line cases between embezzlement and larceny by bailee, where the faithless agent or custodian sometimes escaped his just deserts on the ground that his actions were only a breach of trust for which he was not responsible by criminal prosecution, or even by civil action except in assumpsit.

"Thereafter, it was a public wrong, a misdemeanor, fraudulently to withhold, convert to one's use or the use of another, or misapply money or property, or the proceeds of property, *belonging to another,* which had been lawfully received by, or which had come lawfully into the possession of, the defendant; and being such; it was also a civil wrong, delict, or tort against the party specially or particularly injured thereby, whose property had thus been wrongfully withheld, converted or misapplied, for which damages could be recovered in an action of 'trespass' ".

The gravamen of the offense of fraudulent conversion is the withholding of the property of another with the intent to defraud or deprive that other person of the use and benefit of his property and to convert or apply the same to defendant's own use or benefit: *Commonwealth v. Spiegel*, 169 Pa. Superior Ct. 252, 82 A. 2d 692. On the other hand, the crime of cheating by fraudulent pretenses contemplates the false representation of an existing fact which is calculated and intended to deceive, and does actually deceive, and by means of which one person obtains value from another without compensation: *Commonwealth v. Thomas*, 166 Pa. Superior Ct. 214, 70 A. 2d 458.

In support of his second contention, appellant cites *Commonwealth v. Mitchneck*, 130 Pa. Superior Ct. 433, 198 A. 463, wherein an employer, who had deducted store bills from the wages of his employes and then failed to pay the storekeeper, was held not guilty of fraudulent conversion. In the *Mitchneck* case the money was owing to others, as opposed to money belonging, in the sense of title and ownership, to others, which is the situation in the case at bar. A prosecution for fraudulent conversion is properly brought against one who has received property in any capacity and afterwards fraudulently misapplies it, even though an indictment for a different statutory offense might also have been proper: *Commonwealth v. Schuster*, 158 Pa. Superior Ct. 164, 44 A. 2d 303. In the words of Judge WEINROTT, ". . . where as here the transfer to the defendant was merely for the purpose of permitting him to have available a supply of cash with which to make a purchase of certain real estate there is criminal responsibility under the statute for a fraudulent appropriation of the property by defendant for his own use and benefit".

The judgment is affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part thereof which had not been performed at the time the order of supersedeas was entered.