Frank A. GIBSON, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 14845, 14846.

United States Court of Appeals District of Columbia Circuit.

Argued March 31, 1959.

Decided May 28, 1959.

Petition for Rehearing Denied June 19, 1959.

3. 28 U.S.C.A. § 2201 (Supp. 1958).

4. 60 Stat. 237 (1946), as amended, 5 U.S. C.A. §§ 1001–1009.

Mr. Daniel I. Sherry, Washington, D. C. (appointed by the District Court) for appellant.

Mr. Edward C. O'Connell, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before PRETTYMAN, Chief Judge, and WILBUR K. MILLER and BAZELON, Circuit Judges.

PER CURIAM.

Tried under two consolidated indictments, Frank A. Gibson was convicted under two counts charging embezzlement [1] and two counts charging obtaining money by false pretenses. All the sentences were made concurrent.

We summarize the testimony of the Government's witnesses with respect to the embezzlement counts: In September, 1956, Jacob N. Bigelow approached Gibson, who was doing business as a building contractor under the style of "Associated Contractors," and informed him that he desired to have a house built. Gibson asked Bigelow if he had a lot and the latter responded that he had not; that he knew of a vacant lot at the northwest corner of 19th Street and Bunker Hill Road, N. E., but did not know whether it was for sale. Several days later Gibson telephoned Bigelow that the land was for sale, that he had "tied it up," and that if Bigelow would bring to his office a down payment of $3,500 he would get the land for him and build on it.

Bigelow and his wife went to Gibson's office on September 26, 1956, to arrange for the purchase of the lot and the construction of a house thereon. Gibson told them he had purchased the lot for Bigelow or that he held an option to purchase

---

1. Section 22–1202, D.C.Code (1951), provides:

"If any agent, attorney, clerk, or servant of a private person or copartnership, or any officer, attorney, agent, clerk, or servant of any association or incorporated company, shall wrongfully convert to his own use, or fraudulently take, make away with, or secrete, with intent to convert to his own use, anything of value which shall come into his possession or under his care by virtue of his employment or office, whether the thing so converted be the property of his master or employer or that of any other person, copartnership, association, or corporation, he shall be deemed guilty of embezzlement * * *."

it. A written contract was then prepared by Gibson's secretary. Bigelow, his wife and Gibson signed the contract; and Bigelow delivered to Gibson $1,176 in cash, a cashier's check in the amount of $2,000, and another check payable to Bigelow's order in the amount of $324. Bigelow testified their agreement was that the $3,500 was to be used by Gibson to purchase the Bunker Hill Road lot for him.

The written contract, however, provided only that Gibson was "To perform all work necessary and furnish all meterials [sic] to build a single family dwelling to be erected on Parcel 158/55 located at 19th Street and Bunker Hill Road, N. E.," in accordance with certain plans and specifications, and that Bigelow and his wife ("the Owners") were "to pay the Contractor * * * for the above mentioned work" the sum of $24,250, $3,500 of which was to be paid upon the signing of the contract.

A few days after the signing of the contract, Bigelow was informed by appellant that the check in the amount of $324 had been returned on account of insufficient funds. On November 30, 1956, Bigelow delivered to Gibson $324 in cash to replace the bad check.

From time to time following the execution of the contract and the making of the down payment, Gibson assured Bigelow he had purchased the land, had the building permit and was ready to build. In reply to Bigelow's periodic inquiries, he offered various reasons why he had not yet begun construction. Finally, after complaining to the United States Attorney, Bigelow confronted Gibson at the latter's office in February, 1958, and told him he had learned the land had not been purchased for him, that Gibson had never tried to buy it, and had never obtained or even applied for a building permit. Bigelow demanded return of his money and Gibson refused. At a subsequent hearing at the United States Attorney's office, Gibson told an assistant United States Attorney he had purchased the lot through a straw. Given an opportunity to prove title, Gibson failed to appear at a later hearing date; thereupon a warrant for his arrest was issued.

Gibson in fact never owned or held an option on the Bunker Hill Road lot. He had no connection with the owner of the lot and had never made inquiry of the owner with reference to its purchase. Nor had he applied for a permit to build on the lot. At his trial, he stated Bigelow had told him from the beginning that he, Bigelow, owned the lot, and that their agreement, pursuant to which the down payment was made, was only for the construction of a house on the lot Bigelow claimed to own.

 The jury found Gibson guilty of embezzlement in respect to the sums of $3,176 and $324, which together constituted the down payment paid to Gibson by Bigelow. On appeal Gibson urges that the evidence adduced at the trial does not support the verdicts on these counts. The two sums constituting the down payment from Bigelow, he contends, did not come into his possession by virtue of any employment or agency relationship, but were paid to him pursuant to his contract to build a house.

It is true the written contract provides that the $3,500 down payment was to be in partial payment for construction of a house; but there was also ample evidence from which the jury could find, despite the terms of the written instrument, that Gibson had agreed to purchase the lot for Bigelow, that Bigelow thought the written contract embodied the purchase of the lot as well as the construction, that Gibson knew Bigelow so believed, and that the sums totalling $3,500 were delivered to Gibson as agent to purchase the lot for Bigelow.

Whether it was error for the trial court to allow the jury to give legal effect to the oral agreement and understanding of the parties for the purpose of establishing the relationship between them in respect to these payments, depends upon the applicability and effect of the parol evidence rule.

 In general, where the parties to a contract have reduced their agree-

ment to a writing intended to cover the transaction between them, the law deems the writing to be the sole memorial of the act, and deprives of legal effect all the other utterances and understandings of the parties. 9 Wigmore, Evidence § 2425 (3rd ed. 1940). However, the parol evidence rule is binding only between those persons who are parties to the contract or their privies, and does not apply in this case where the controversy is between the government and a party to the contract. "The people prosecuting for a crime committed in relation to a contract are not parties to the contract and are not bound by it. They are at liberty in such a prosecution to show the true nature of the transaction." People v. Chait, 69 Cal. App.2d 503, 159 P.2d 445, 454 (1945). See also Landa v. Commissioner, 92 U.S. App.D.C. 196, 206 F.2d 431 (1953); Harrington v. Emmerman, 88 U.S.App. D.C. 23, 27, 186 F.2d 757 (1950); Spund v. Cafritz Const. Co., 60 App.D.C. 102, 48 F.2d 1014 (1931); Commonwealth v. Sherman, 182 Pa.Sup. 319, 126 A.2d 480 (1956); State v. Morin, 131 Me. 349, 163 A. 102 (1932); State v. Davison, 74 N.H. 10, 64 A. 761, 765 (1906); People v. Walker, 85 App.Div. 556, 83 N.Y.S. 372, affirmed 178 N.Y. 563, 70 N.E. 1105 (1904); 9 Wigmore, Evidence § 2446 (3rd ed. 1940).

■ Furthermore, under the parol evidence rule extrinsic evidence varying the terms of a written contract may be introduced where one of the parties to the contract was mistaken as to its terms and his mistake was induced by the fraud of the other party or was known to the other party. 9 Wigmore, Evidence §§ 2415, 2416 (3rd ed. 1940). Cf. 3 Corbin, Contracts § 610; Tokio Marine and Fire Ins. Co. v. National Union Fire Ins. Co., 18 F.Supp. 720, 722 (D.C.S.D.N.Y.1937); New England Mut. Life Ins. Co. v. Jones,

1 F.Supp. 984 (D.C.E.D.Ky.1930); Beatty v. Donahue, 249 S.W.2d 33, 35 (Ky. 1952); Warren v. Osborne, 154 S.W.2d 944, 946 (Tex.Civ.App.1941); Daly v. Simonson, 126 Iowa 716, 102 N.W. 780 (1905). As earlier stated, there was adequate evidence here that Bigelow mistakenly believed the written contract he signed conformed to the oral agreement, and that Gibson knew he was so mistaken.

The jury therefore was free to consider and give legal effect to the parol agreement between Gibson and Bigelow for the purpose of determining their relationship in respect to the two sums delivered to Gibson upon the signing of the contract. The evidence so considered was sufficient to support the jury's finding that Gibson received the $3,500 as agent to purchase the Bunker Hill Road lot for Bigelow and that he wrongfully converted it to his own use.

■ Appellant raises additional questions concerning his conviction on two counts of false pretenses on the consolidated indictments. Since the sentences on those counts are each less than the sentence imposed on the embezzlement counts, the validity of which we sustain, and are concurrent therewith, it is not necessary for us to examine his contention regarding them. Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); Matthews v. United States, 100 U.S.App.D.C. 29, 240 F.2d 890 (1957); Wanzer v. United States, 93 U.S.App.D.C. 412, 208 F.2d 45 (1953). We do not think the fact that the concurrent sentences are on counts contained in consolidated indictments rather than in a single indictment warrants a distinction between this case and Hirabayashi. Fed.R.Crim.Proc. 13, 18 U.S.C.A.

Affirmed.