## Commonwealth v. Matthews

Before FORTNEY, P. J., and TROUTMAN, J.

*Harold F. Bonno*, District Attorney, and *Sanford S. Marateck*, Assistant District Attorney, for Commwealth.

*Myron M. Moskowitz* and *Daniel F. Knittle*, for defendant.

Per Curiam, November 23, 1959. — This matter comes before the court en banc on motions for a new trial and arrest of judgment after a verdict of guilty on an indictment charging defendant with cheating by fraudulent pretenses.

The indictment charged that defendant, as an officer, manager or agent of the Reading Home Supply Company, did by false pretense, knowingly and with intent to cheat and defraud, obtain from the Guarantee Trust and Safe Deposit Company of Shamokin, Pa., money by signing and transfering to it for valuable consideration a certain agreement of lease and judgment note, each of which is dated on or about June 10, 1957, and containing the signature of one Herbert J. Linderman and Florence Linderman, representing that the said Reading Home Supply Company did own the same by reason of making an outright sale of the chattel described in the said agreement of lease and for which the said judgment note had been received by the said defendant in payment thereof, acting for and on behalf of the Reading Home Supply Company, without revealing to the Guarantee Trust and Safe Deposit Company of Shamokin, Pa., that the said chattel had not been sold and delivered, knowing full well or having reasonable opportunity so to know, that the said chattel had not been sold and delivered as repre-

sented to the bank and as a result of said false representation and pretense obtained the sum of approximately $1,150.50,

Following the verdict, defendant filed his motions for a new trial and in arrest of judgment assigning four reasons in support of the same, namely, that the verdict is contrary to the evidence, the verdict is contrary to the weight of the evidence, the evidence was insufficient to sustain the verdict of the jury and that the verdict is against the law in the case. Subsequently, defendant filed two additional reasons in support of his motions, namely, that the honorable court erred in ruling, at page 166 of the notes of testimony, that the parol evidence rule does not apply and that the court erred in his charge to the jury in relation to an alleged quotation from the testimony of Mr. English which, he avers, was prejudicial to defendant.

In considering motions of a defendant for a new trial and arrest of judgment following conviction, the court must accept as correct the testimony submitted by the Commonwealth as well as the reasonable inferences which can properly be drawn therefrom.

The question raised by defendant's first additional reason in support of his motion for new trial is whether the court erred in ruling that the parol evidence rule did not apply in this case. The record discloses that a lease sale agreement for a freezer was signed by Herbert J. Linderman and Florence Linderman, together with a judgment note. Paragraph 3 of the written lease sale agreement stated that the lessees acknowledged receipt of the freezer. The lease sale agreement and the judgment note were assigned by defendant to the Guarantee Trust and Safe Deposit Company. When the witness, Florence Linderman, was questioned as to a subsequent conversation with Matthews concerning the freezer, an objection was made that such testimony was inadmissible under the parol evi-

dence rule inasmuch as they were attempting to vary the terms of the written agreement. The court overruled the objection, stating that in a case of this type the testimony of the witness was admissible even though it varied the terms of the written agreement. This witness testified that a freezer had never been delivered to her house or into her possession and that after an assistant of defendant had measured her kitchen and stated that the freezer would not fit into the space which she had, defendant said he was sorry that they could not do any business and left the premises.

John Linderman, an employe of the Guarantee Trust and Safe Deposit Company, who had handled most of the transactions with Matthews, defendant, testified that he accepted an assignment of the lease sale agreement, together with an assignment of the judgment note without being informed that a freezer had not been delivered to the Lindermans.

The gravamen of the offense in this case is that defendant is alleged to have obtained money from the bank by false representations. Consequently, fraudulent conduct being at the very root of the issue in this case, the Commonwealth can show any acts of alleged fraudulent conduct. While the parol evidence rule is probably as applicable in criminal cases as it is in civil cases, nevertheless it is clearly inapplicable where fraud is alleged. See Commonwealth v. Sherman, 182 Pa. Superior Ct. 319, 323.

Defendant in this case is charged with having made fraudulent representations with the intent to cheat and defraud. It is not a suit on the lease agreement nor is it a suit for specific performance. The contract is actually collateral to the main issue involved in this criminal proceeding. Fraud is the very gist of this offense. Certainly, the parol evidence rule was never meant to condone the commission of a crime. The testi-

mony in this case indicates that upon being asked by Mr. Linderman to return the papers, defendant indicated to him that they would never be used. As a matter of fact, they were used by defendant when he assigned them to the bank and obtained money as a result thereof.

We find no merit in the defendant's first additional reason for a new trial. . . .

The third question raised by defendant's motions for a new trial and arrest of judgment is whether the court should have directed a verdict of acquittal. This raises the question as to whether or not there was sufficient evidence of the crime charged to warrant the conviction of defendant and involves the four original reasons assigned by defendant in support of his motions for a new trial and in arrest of judgment.

The crime of cheating by fraudulent pretenses contemplates the false representation of an existing fact which is calculated and intended to deceive, and does actually deceive, and by means of which one person obtains value from another without compensation. Commonwealth v. Sherman, supra 325. The elements of the crime of obtaining property by false pretense, are (1) a false pretense; (2) obtaining property of value thereby, and (3) an intent to cheat and defraud: Commonwealth v. Gross 161 Pa. Superior Ct. 613; Commonwealth v. Hancock, 177 Pa. Superior Ct. 585, 592.

Accepting as correct the testimony submitted by the Commonwealth as well as the reasonable inferences which can properly be drawn therefrom, as we are obliged to do in considering defendant's motions in this case, the testimony discloses that in the month of April 1957, defendant, on behalf of Reading Home Supply Company, arranged for a line of credit with the Guarantee Trust and Safe Deposit Company whereby defendant would assign to the Guarantee

bank lease sale contracts relating to the sale of freezers and judgment notes. The arrangement between the Guarantee bank and defendant was that the bank would discount the paper when Matthews had arranged for the lease sale of a freezer, the execution of the contract and delivery of the contract and freezer. Pursuant to this arrangement, on June 11, 1957, defendant presented to the Guarantee bank a lease sale agreement for a freezer, duly signed by one Herbert J. Linderman and Florence Linderman, and a judgment note executed by the same parties. Paragraph 3 of the written lease sale agreement stated that the lessee acknowledged receipt of the freezer. The representation evidenced by this written document was made that a bona fide lease sale agreement had been entered into between Reading Home Supply Company and the Lindermans. This agreement was assigned to the Guarantee bank by the defendant and in reliance upon the lease sale agreement and the terms of paragraph 3 of the written agreement, the Guarantee Trust and Safe Deposit Company paid to the defendant the sum of $926.25.

At the time of this transaction, on June 11, 1957, John Linderman, an employe of the bank, testified that he did not know that a freezer had not been delivered to Herbert J. Linderman and Florence Linderman. It is the testimony of Herbert J. Linderman and Florence Linderman that they did not receive from defendant any freezer, and they did not make any payments to defendant or to the Reading Home Supply Company for such a freezer.

It was testified by J. R. English, president of the bank, that the lease sale agreements and the notes which were assigned by defendant and discounted by the Guarantee bank for defendant, were discounted on the security of the recourse endorsement, the credit of

the individuals involved, and on the provisions of the lease sale agreement of the freezer.

There is ample testimony in this record for the jury to find that the bank relied upon the assignment by Matthews of what appeared on the surface to be a bona fide lease sale of a freezer and a delivery of a freezer to Herbert J. Linderman and Florence Linderman. There is likewise ample testimony for the jury to determine that defendant knew that he had not delivered a freezer to the Lindermans in accordance with the lease sale agreement and that the representation as it appeared in paragraph 3 of said agreement, which was assigned by defendant to the Guarantee bank, was false and made with the intent to cheat and defraud the bank. There is testimony to the effect that Matthews informed the Lindermans that the papers which they signed were no good and that he would destroy them, and there is further testimony to the effect that several days following the transaction with the Lindermans, and after the paper was assigned to the bank, defendant informed them that if they received a notice from the Guarantee Trust and Safe Deposit Company they were to ignore the same and that he would take care of it. Certainly, from this testimony alone the jury could have concluded that defendant discounted the sales agreement and judgment note of the Lindermans with the intent to cheat and defraud the bank.

It is the contention of defendant that inasmuch as the Guarantee bank had in its possession a reserve account accumulated from moneys retained by them upon the discount of many prior lease sale contracts and judgment notes assigned to them by defendant, there was ample money for them to reimburse themselves for the amount which was paid to defendant on account of the Linderman contract involved in this case.

The testimony discloses that under the credit arrangements made between defendant and the Guarantee bank, five percent of the amount of the contract was deducted from the amount paid to the Reading Home Supply Company which the bank kept in a reserve account and that at the time of this transaction there was the sum of approximately $10,000 in the reserve account of the Reading Home Supply Company and that in December 1957 there was the sum of approximately $21,000 in reserve accounts of both the Reading Home Supply Company and the Shamokin Home Supply Company, which was the name of a new company, of which defendant was the manager.

The record discloses that the purpose of the reserve account was to take care of any delinquencies which may occur in the payments of any accounts which the bank had discounted. The testimony shows that payments were made on the Linderman account, it being the testimony of John Linderman, the bank employe, that he did not know who made the payments except that he did know that defendant had made the last payment on the same. Mr. and Mrs. Linderman testified that they made no payments on account of the contract or note. We conclude, therefore, that defendant paid off this account subsequent to its assignment to the bank.

It is defendant's contention that the bank did not suffer any loss because the loan was paid off and the contract turned back to Matthews. Furthermore, there were always sufficient funds in the reserve account to pay this indebtedness.

It is clearly the law in Pennsylvania that restitution or repayment of money that is originally obtained by false pretenses is no defense. Commonwealth v. Stone, 187 Pa. Superior Ct. 236; Commonwealth v. Gross, 161 Pa. Superior Ct. 613. We are of the opinion that the fact that there was a reserve account in the

Guarantee bank at the time the Linderman paper was discounted, has no effect in this case. The reserve account was set up to provide for any delinquencies in the payment of several hundred loan accounts which had been made with the Reading Home Supply Company and/or Shamokin Home Supply Company, of which defendant was the manager. The fact that defendant obtained a check in the sum of $926.25 when the lease sale agreement and judgment note of Herbert J. Linderman and Florence Linderman were assigned to the bank by defendant clearly shows that defendant obtained value as a result of the false pretense or representation. The reserve accounts were only used to take care of any delinquencies which may occur in the various accounts held by them.

The word "obtain" as used in the statute means not so much a defrauding or depriving another of his property as obtaining some benefit to the party making the false pretense: Commonwealth v. Schmunk, 22 Pa. Superior Ct. 348, 355; Commonwealth v. Stone, supra, 241. Unquestionably, defendant did obtain a sum of money when the paper was discounted and the sum of money was obtained by reason of the presentation of an assignment of what appeared to be a legally valid lease sale agreement and judgment note. By obtaining this amount of money, defendant added to the amount of credit which the bank was extending to him under his financial arrangement with it. The fact that there was a reserve account which could be applied on any losses which the bank might sustain by reason of nonpayment of the various notes discounted by it, does not detract in any way from the fact that defendant did obtain money from the bank by making a false representation of an existing fact with an intention to defraud the bank. By reason of falsely representing an existing fact, namely, a valid lease sale agreement, defendant obtained additional credit from the bank

which was something of value, and it is immaterial that there may have been other accounts standing to defendant's credit which might be used as a means of restitution.

A careful review of the record in this case leads us to the conclusion that there was sufficient evidence of the crime charged to warrant the conviction of defendant. Defendant's motions for a new trial and in arrest of judgment must be refused.

### Order

And now, to wit, November 23, 1959, defendant's motions for a new trial and in arrest of judgment are hereby refused. Defendant is directed to appear before this court on December 7, 1959, at 10 a.m., in Court Room No. 1, Courthouse, Sunbury, for sentence.

Let an exception be noted for defendant.